## GENERY STEVENS *vs.* BERT F. PIERCE.

Worcester.    October 4, 1888. — October 19, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Insolvent Debtor — Sale in Ordinary Course of Business — Fraudulent Preference.*

The Pub. Sts. c. 157, § 98, providing that, if a conveyance of property by an insolvent debtor is not made in the ordinary course of business, that fact shall be *prima facie* evidence that the grantee had reasonable cause to believe him insolvent, apply to conveyances made to pre-existing creditors by way of preference, as recited in § 96.

At the trial of an action by an assignee in insolvency, to recover the value of personal property alleged to have been purchased in fraud of the insolvency laws, there was evidence that the insolvent had disposed of his business and part of the personal property used by him therein; that he offered the rest of such property to the buyer, who had been in his employment and whose wife was a creditor for money lent to use in the business, for a certain price; that the buyer, though he considered it worth much less, without attempting to get it for less, at once accepted the offer; that the buyer received a bill of sale, took possession of the property, and gave an order for the price on a savings bank, where he had no money, but where he afterwards deposited a sum in excess of the order; that he went to the bank with the insolvent's attorney, who drew it and gave it to the insolvent; that the insolvent at once left the State, and that before the money was paid the insolvent was informed, in the buyer's presence, that a warrant for his arrest had been issued. *Held,* that there was evidence for the jury on the question whether the sale was made in the ordinary course of business.

TORT by the assignee in insolvency of one Adams, an insolvent debtor, for the conversion of certain articles of personal property. Trial in the Superior Court, before *Dewey*, J., who allowed the following bill of exceptions.

There was evidence showing that, in May, 1887, Adams was in business as a grocer, and as such was in possession of a stock of groceries, and several horses and wagons and carriages; that a part at least of this latter property was used in connection with his business as a groceryman; that the defendant was in his employment, as an assistant book-keeper and salesman, under an arrangement whereby he was to receive a fixed salary, with an understanding that he might enter into copartnership with him in case both parties were satisfied with the business; that the defendant's wife lent to Adams the sum of five hundred

dollars in May, 1887, and took his note therefor; that such sum, in case Adams and the defendant formed a copartnership, was to be deemed to be so much capital paid in by the latter, and the note was to be cancelled; that if the copartnership was not formed, the note should be paid to the defendant's wife; that the sum of five hundred dollars was made up of money standing to the credit of the wife in a savings bank, and of money accumulated by her from gifts made her by the defendant; that very soon after the note was given, the defendant decided not to go into partnership with Adams, and so notified him, and it was then arranged that he should remain on a salary; that on July 25, 1887, Adams sold his entire stock in trade to Stone and Carter, and so much of his personal property, consisting of horses, wagons, carriages, and harnesses, as they desired to buy, and they succeeded him in his business at the same stand; that at the time of the sale the note to the defendant's wife had not been paid; that at the same time Adams offered to sell to Stone and Carter the personal property in question, and they declined to buy it, as it was not wanted by them in their business.

There was also evidence that Adams thereupon offered it to the defendant for the sum of three hundred and fifty dollars, and the defendant, though considering it worth only two hundred and sixty-five dollars, made no attempt to obtain it at a less price, but immediately accepted the offer; that Adams thereupon gave to the defendant a bill of sale of the property for that sum, containing full covenants as to title, right to sell, and incumbrances, and delivered it to the defendant; that when the defendant bought, took the bill of sale, and obtained possession of the property, he had in his pocket more than enough money to pay for it; that, instead of paying for it, he went to the People's Savings Bank and deposited four hundred dollars, and immediately drew an order on the bank for three hundred and fifty dollars in favor of Adams; that he accompanied one Redding, who was then acting as the legal adviser of Adams, to the bank, where Redding obtained the amount and paid it to Adams, who was waiting at Redding's office for it, and who, after obtaining it, immediately left the State; that on the night before the money was paid, Adams and the defendant were

together, when Redding came and informed Adams that a writ was in an officer's hands for his arrest; that at the time the order on the bank was given, the defendant had to his credit in the bank the sum of one dollar ninety-eight cents only, which had remained there since 1881; and that he had never deposited in or withdrawn from the bank any sum between 1881 and July 26, 1887.

There was also other evidence, tending to show that Adams was insolvent at the time of the sale to the defendant, and that the defendant had reasonable cause to believe him insolvent. The plaintiff contended, upon the evidence, that the transaction between Adams and the defendant, though in form a sale, was a sham, and that no title passed from Adams to the defendant. The defendant contended that the transaction was an honest one, and that title did pass to him. As to this, the presiding judge gave instructions, which were not excepted to.

The plaintiff also contended, upon the evidence, that the execution and delivery of the bill of sale, and of the property included therein, were for the purpose of paying, in whole or in part, the note aforesaid, from Adams to the defendant's wife, and was therefore void, as a fraudulent preference, and to evade the provisions of the insolvent laws.

The defendant asked the judge to rule, upon the evidence, that the last clause of § 98 of c. 157 of the Public Statutes was inapplicable in the case at bar; and that the circumstances attending the sale, as before recited, were not *prima facie* evidence of a reasonable cause of belief, on the part of the defendant, in the insolvency of Adams.

The judge refused so to rule, and ruled, " 1st, that if the property, or the main part of it, was used by Adams in his business as grocer, and if the money borrowed by Adams of the defendant's wife was for use in his business, and if Adams sold the property to the defendant to be applied in payment of the note to the defendant's wife, then it was for the jury to say whether or not the sale was made in the usual and ordinary course of the debtor's business, and that, if they found it was not, that fact was to be taken in this case as *prima facie* evidence of a reasonable cause of belief, on the part of the defendant, that Adams was insolvent, and that the sale was in violation of the insolvent

laws; and 2dly, that the last clause of § 98 was applicable in the case at bar."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. Hopkins*, for the defendant.

*F. A. Gaskill*, for the plaintiff.

DEVENS, J.   The bill of exceptions in the case at bar is somewhat obscure, and the counsel, according to their respective briefs and arguments, do not concur in their interpretation of it, or in their view of the question intended to be raised. The action was brought by the plaintiff as assignee of Adams, an insolvent debtor, to recover the value of certain personal property, alleged to have been purchased by the defendant in fraud of the insolvency laws of the Commonwealth; and one ground, if not the only one, upon which the plaintiff sought to establish his case, was that the purchase was made in order thereby to effect a preference for the defendant's wife, who was a creditor of Adams.   The defendant asked the presiding justice to rule, that, upon the evidence, the last clause of § 98 of c. 157 of the Public Statutes was inapplicable to the case at bar, and that the circumstances attending the sale as recited were not *prima facie* evidence of a reasonable cause of belief on the part of the defendant of the insolvency of Adams.   The presiding justice refused this ruling and ruled, " that if the property, or the main part of it, was used by Adams in his business as grocer, and if the money borrowed by Adams of the defendant's wife was for use in his business, and if Adams sold the property to the defendant to be applied in payment of the note to the defendant's wife, then it was for the jury to say whether or not the sale was made in the usual and ordinary course of the debtor's business, and that, if they found it was not, that fact was to be taken in this case as *prima facie* evidence of a reasonable cause of belief, on the part of the defendant, that Adams was insolvent, and that the sale was in violation of the insolvent laws, and that the last clause of § 98 was applicable in the case at bar."

The plaintiff contends that the only question raised by the exceptions is whether the provision of the Pub. Sts. c. 157, § 98, that sales, etc. not in the ordinary course of business shall be *prima facie* evidence of a reasonable cause of belief by the pur-

chaser in the insolvency or contemplated insolvency of the seller, is applicable to sales, etc., under § 96 of the same chapter, which relates to fraudulent preferences of creditors. If this is the true construction of the exceptions, the case at bar does not require discussion, as it is fully settled that the provision referred to applies to both sections. *Nary* v. *Merrill,* 8 Allen, 451. *Metcalf* v. *Munson,* 10 Allen, 491.

These decisions are upon §§ 89, 91, of the Gen. Sts. c. 118, but the Pub. Sts. c. 157, §§ 96, 98, are respectively re-enactments of these, with very slight and purely verbal alterations.

The defendant contends that the question raised by the exceptions is whether the sale to the defendant was of such a character as to afford *prima facie* evidence of a reasonable cause of belief, on the part of the defendant, of the insolvency of the vendor. His request for instructions on this point was, as before stated, " that the circumstances of the sale, as before recited " in the bill of exceptions, " were not *prima facie* evidence of a reasonable cause of belief, on the part of the defendant, of the insolvency of Adams." This instruction could not have been given as matter of law, if there was any evidence to be considered by the jury upon the inquiry whether the circumstances of the sale indicated a sale of the property employed in his business, and thus connected with it, and yet not according to the usual and ordinary course of it. It would be sufficient to say that we cannot review the refusal to give this instruction, when it appears, as it does by the bill of exceptions, that there was other evidence, not reported, that Adams was insolvent at the time of the sale to the defendant, and that the defendant had reasonable cause to believe him so, as such facts must necessarily have qualified and characterized the transaction of the sale. But waiving this, there was evidence of circumstances attending the sale proper to be submitted to the jury in determining its character. The defendant's wife was a creditor of Adams on the same day that he sold out his entire stock in trade to Stone and Carter, and so much of the personal property, such as horses, wagons, etc., as they desired to buy; he offered to the defendant the remainder of the personal property for three hundred and fifty dollars, and, although the defendant considered it worth only two hundred and sixty-five dollars, he made no

attempt to obtain it for a less price, but immediately accepted the offer. He received a bill of sale, and took possession of the property, and gave an order on a savings bank for the amount, where at the moment he had no money, but where he subsequently deposited four hundred dollars in the presence of the attorney of Adams, who then drew the money and gave it to Adams, who left the State. Before the money was paid, Adams was informed in the defendant's presence that a warrant for his arrest had been issued. While it was not directly shown that any of this money came back to the defendant, or that it was paid to his wife, the utter improbability that the defendant would pay for property so much more relatively than he believed it to. be worth to the debtor of his wife, whose money had been advanced to aid him in entering into business, and the other circumstances adverted to, tended to show that the whole transaction by which the property of Adams had been transferred to the defendant was a simulated one. To the ruling of the presiding judge, which on the facts therein set forth, if found by the jury, submitted to them the question whether the sale was one made in the ordinary course of business, the defendant has no just ground of objection.                    *Exceptions overruled.*