UBERT A. KILLAM *vs.* HENRY PEIRCE & another.

Essex.   November 7, 1890. — May 18, 1891.

Present: W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Insolvent Debtor — Fraudulent Preference — Evidence — Reputation.*

A trader, two days before insolvency proceedings were instituted against him, sold the entire stock in his store, and took the purchaser's notes in payment therefor. The sale was made late at night, and an agent of the creditor, seeing a light, entered the store, and, on being informed of the transaction, took the notes at the trader's request in payment of his principal's account, all of which was not then due. The trader had never before paid his bills until they became due, or otherwise than by check or cash. The agent knew that the trader had bought goods of others on credit, and supposed that he was indebted therefor and had no other valuable assets. *Held*, in an action by the assignee in insolvency to recover such payment as being a preference, that the question whether it was made in the ordinary and usual course of business was to be passed on as a question of fact.

In an action by an assignee in insolvency to recover a payment made by the debtor by way of preference, the latter's general reputation of doing business on borrowed money is admissible on the issue whether the defendant had reasonable cause to believe him insolvent.

CONTRACT, by an assignee in insolvency, to recover money alleged to be paid by the insolvent debtor to a creditor in fraud of the insolvent laws, with a count in tort for the conversion of three promissory notes. Trial in the Superior Court, before *Thompson*, J., who reported the case for the determination of this court.

There was evidence tending to prove the following facts. Frank W. Flanders engaged in business in Lawrence, in Septem-

ber, 1887, as a retail grocer, with a capital of $1,800, borrowed by him from his brother for that purpose. The defendants, who were a firm of wholesale grocers in Boston, from time to time sold him merchandise for cash, which by the usage of trade meant payment at any time within thirty days. On August 6, 1888, besides being indebted to the estate of his brother for the $1,800, he owed for merchandise $1,900, including $770 to the defendants. His entire assets at this time consisted of $200 in cash, of his stock in trade, a team, and fixtures, all of the value of $1,000, and of book accounts of an actual value of $300. All his purchases from the defendants were made through one Willard, who was employed by them as a salesman, and who lived in Lawrence, a short distance from his store. On the evening of that day, Flanders sold his entire stock in trade, together with the team and fixtures, to one Jackman, for $1,000, and took from him the notes in question in payment therefor. Willard, in passing the store about ten o'clock, saw a light there, and, upon being admitted, inquired what was being done. Flanders told him that he had sold out to Jackman, and had taken his notes in payment, and could and would pay what he owed. At that time his indebtedness to the defendants was overdue, except two items for goods bought on July 9, within the thirty days preceding. Willard agreed, at Flanders's request, to take the notes in payment of the defendant's account, and to pay Flanders the difference in money. The notes were then transferred to Willard, who paid him $230 in money, and gave receipts for his indebtedness to the defendants. Jackman was a responsible person, and the notes, which were subsequently transferred by Willard to the defendants, were paid when they became due. Two days later, involuntary proceedings in insolvency were instituted against Flanders, and he was adjudged an insolvent debtor, and the plaintiff was appointed assignee of his estate.

Before the transaction of August 6, 1888, Flanders had never paid by note, but always by cash or check, nor had he ever paid his bills before they became due. His stock in trade usually varied from $1,000 to $1,500 in value.

At the time Willard took the notes, he supposed that Flanders had no assets other than the stock, fixtures, and team, and

some ledger accounts, the amount and nature of which he knew nothing about. Willard also knew that Flanders bought goods from other parties, and that he bought on credit, and supposed that Flanders owed other merchandise indebtedness.

Willard testified, and the judge found as a fact, that he had no knowledge or information that Flanders owed his brother's estate, or was doing business on borrowed money. The plaintiff offered to show that on August 6, 1888, Flanders was commonly reported in Lawrence to be doing business on a borrowed capital. The judge excluded the evidence, but ruled that it was competent to show that Flanders was in bad repute financially; and to the exclusion of this evidence the plaintiff excepted.

The judge found that the payment made by Flanders to the defendants was not a fraudulent preference by him, unless upon the foregoing facts the payment was not made in his ordinary and usual course of business; and that if the payment was not made in his ordinary and usual course of business, then the payment was a fraudulent preference. The judge ruled, as matter of law, that the payment was made in the usual and ordinary course of Flanders's business, and found for the defendants. If the ruling was correct, judgment was to be entered for the defendants, unless the exception to the exclusion of the evidence offered by the plaintiffs is sustained, in which case a new trial was to be granted; but if, upon the foregoing facts, the payment was not made by Flanders to the defendants in the ordinary and usual course of his business, then judgment was to be entered for the plaintiffs for $770, with interest.

*B. B. Jones*, for the plaintiff.

*W. S. Knox*, for the defendants.

HOLMES, J. 1. The main question before us is whether the payment to the defendant by Flanders appears, as matter of law, to have been made in the usual and ordinary course of business. The plaintiff does not seek to avoid Flanders's sale of his stock in trade, as in *Walbrun* v. *Babbitt*, 16 Wall. 577. On the contrary, his claim to the proceeds is based upon an affirmance of the sale. The only way in which the sale, or knowledge of it and of the manner in which it was made, could be considered to the defendants' disadvantage would be as bearing on their actual good faith when they took the notes, if the

case were left to a jury. Starting with a valid sale by the insolvent, which puts him out of business, we cannot say, as matter of law, that a transfer by him of the purchaser's notes to a creditor for their face value in cash and in payment of debts is not in the usual course of business. All that remains for him to do is to pay his debts, and that is all that he does in the case supposed. See *Thacher* v. *Pray*, 113 Mass. 291.

But when we take into account all the circumstances of the payment in question, we are unable to say that a jury, or in this case the judge, would not have been warranted in finding that it was not made in the usual and ordinary course of business, as matter of fact. It was made late at night, following close upon the sale, and almost as a part of it. Although the plaintiff affirmed the sale, he had a right to argue that the defendants knew it to be a sale which could not stand against an assignee in insolvency if he elected to avoid it, that the defendants took the proceeds with that knowledge, and that they were not in the position of receiving payment from a debtor who had gone out of business at a previous time. Although the greater part of Flanders's account with the defendants was overdue, the credit allowed on the later items had not expired. Flanders never before had paid his bills until they became due, or otherwise than by check or cash, and he at least must have known that he was giving the defendants a preference. We express no opinion upon the weight of the argument, but we are of opinion that the case falls midway between the extremes marked by such cases as *Nary* v. *Merrill*, 8 Allen, 451, and *Pearson* v. *Goodwin*, 9 Allen, 482, where the court can rule one way or the other, and that the question should have been passed upon as a question of fact, even if doing so would have had the same result, which we cannot assume. *Alden* v. *Marsh*, 97 Mass. 160, 163. *Buffum* v. *Jones*, 144 Mass. 29, 30. *Stevens* v. *Pierce*, 147 Mass. 510. *Pearson* v. *Goodwin*, 9 Allen, 482, 483.

2. It was proved that when Flanders went into business he borrowed about eighteen hundred dollars of his brother for the purpose of carrying it on, and that at the time of the sale he still owed his brother the same amount, and also owed a large amount for merchandise, the total value of his assets being fifteen hundred dollars. The defendants' agent testified that he

did not know that Flanders was doing business on borrowed money. The plaintiff offered to prove that at the time of the sale Flanders was commonly reputed to be doing business on borrowed money. The judge excluded the evidence, but ruled that it was competent to show that Flanders was in bad repute financially. There is no doubt that the general reputation of a man as to solvency is admissible, not to prove the fact, but as bearing on what the party dealing with him has reasonable cause to believe. *Whitcher* v. *Shattuck*, 3 Allen, 319, 321. *Simpson* v. *Carleton*, 1 Allen, 109, 118. *Bartlett* v. *Decreet*, 4 Gray, 111. *Lee* v. *Kilburn*, 3 Gray, 594, 598. General reputation of doing business on borrowed capital is somewhat more specific, but is hardly less likely to come to the ears of those dealing with the person concerned. We are of opinion that it is admissible for the same purpose and on the same ground as reputation for solvency, or of being the owner of valuable real and personal estate; *Metcalf* v. *Munson*, 10 Allen, 491, 492, 493; or of neglecting and mismanaging his business; *Bartholomew* v. *McKinstry*, 6 Allen, 567; or that the printing of mousseline de laine was a ruinous business to those engaged in it; *Denny* v. *Dana*, 2 Cush. 160, 169; or that a tree was in a decayed and dangerous condition. *Chase* v. *Lowell*, 151 Mass. 422, 427.

*New trial granted.*