HARRY J. JAQUITH, assignee, *vs.* WINNISIMMET NATIONAL BANK.

Suffolk.   November 12, 13, 1901. — September 2, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Insolvency*, Unlawful preference.   *Conversion.   Evidence.*

A firm, for the purpose of making an unlawful preference to a certain bank, transferred all its assets to a corporation which assumed and agreed to pay its debts. This corporation did no business except as to the liabilities of the firm and its only capital consisted of the assets of the firm.  In an action by the assignee in insolvency of the firm against the bank for the conversion of certain property delivered to it and for certain sums of money paid to it by the above named corporation and alleged to be fraudulent preferences, it appeared, that both the firm and the corporation were insolvent when the alleged preferences were made, that insolvency was contemplated by the firm, and that when the firm opened an account with the defendant the defendant knew that one of the partners had failed the year before and demanded that $1,000 be placed in the name of its cashier as collateral security for any present or future indebtedness from the firm.  This was done, and a few months later an additional $500 in like manner was required and paid.  During a period of five months the firm overdrew its account sixteen times, one of the overdrafts being for $468 and two others for over $100 each, and on the last overdraft the defendant closed the account with the firm.  In the month following the bank had knowledge that the firm had transferred all its assets to the corporation above mentioned upon the understanding that the corporation should pay all outstanding debts of the firm.  *Held*, that the fact that the legal title to the property and money was in the corporation at the time of the alleged preferences did not affect the plaintiff's right to recover, as the formation of the corporation was merely a scheme or device of the partnership to give a preference to the bank, and that there was evidence, that both the firm and the bank knew that the firm was not in a solvent condition and that the defendant had reasonable cause to believe that the firm was insolvent.

In an action by an assignee in insolvency against a bank for a payment by the insolvent debtor to the defendant of a certain note, alleged to be an unlawful preference, it appeared, that on the day the note was paid the defendant held

three notes made or indorsed by the debtor which were due and had been pro-
tested more than fourteen days before. *Held,* that this of itself was an act of
insolvency under Pub. Sts. c. 157, § 112, and evidence that the defendant had
reasonable cause to believe on that day that the debtor was insolvent.

Evidence that a debtor was insolvent at the time of an alleged preference, that he
made it with the intention of giving a preference over other creditors and that
the person to whom it was made had reasonable cause to believe that the debtor
was then insolvent, will justify a finding that the payment or transfer was made
in fraud of the laws relating to insolvency under Pub. Sts. c. 157, § 96.

An assignee in insolvency of the joint and separate estates of the members of a
partnership was appointed in the county of Suffolk where the partnership did
business, the first publication of notice of the proceeding being given on June
17. Before this an involuntary proceeding in insolvency had been begun in the
county of Bristol, where one of the partners lived, against that partner individu-
ally, the first publication of notice of that proceeding being given on April 23 of
the same year. In an action by the assignee appointed in the county of Suffolk
to recover as an unlawful preference a payment to the defendant on a note
signed by the Bristol County partner payable to the partnership and indorsed
in the firm name, it appeared that the payment was made on March 19 of the
same year out of the private funds of the Bristol County partner. *Held,*
that the action could not prevail, as, if the payment was made under such cir-
cumstances that it could be set aside, this could be done only by the assignee
appointed in the county of Bristol.

In an action by an assignee in insolvency against a bank for an alleged unlawful
preference, the presiding judge, dealing with the question whether the bank had
reasonable cause to believe that a preference was intended, and not then with
the intent on the part of the debtor to prefer, instructed the jury among other
things as follows : "If the bank received directly from the insolvent debtor a
payment in full, that might authorize you to infer that the bank understood
that a preference was intended; but if the property came to the bank through
a third person, the question whether they ought to have understood that this
was a preference may be a different question. That is a question for you to
determine." *Held,* that in the connection in which it was used the instruction
was correct.

In an action by an assignee in insolvency against a bank for the conversion of
certain tobacco alleged to have been delivered to the defendant as an unlawful
preference, there was evidence, that the tobacco which belonged to the insolvent
debtor was substituted for certain mortgages belonging to a third person held
by the bank to secure the note of the insolvent. The presiding judge instructed
the jury, that if part of the purpose in the transaction was to prefer the bank
and if the bank had any reasonable cause to suppose that that was a part of the
purpose, then they might find a fraudulent preference, although, as a matter of
fact, the bank was not benefited by the substitution. The plaintiff then re-
quested a modification of the charge by a further instruction, that if the sub-
stitution was made for the purpose of giving a fraudulent preference to the
owner of the surrendered security, and the bank had reasonable cause to believe
that such was the purpose, the plaintiff might recover although the transaction
was a substitution of collateral. The judge refused to modify the charge. *Held,*
that the refusal of the modification was error ; that the release of security be-
longing to a third person and the substitution for it of property of the insolvent
debtor had the effect of diminishing the estate of the insolvent, and the jury
might have found that there was a preference under Pub. Sts. c. 157, § 98, and

a conversion of the tobacco, without any intent to prefer the bank and although the bank gained nothing by the transaction.

In an action by an assignee in insolvency against a bank for an alleged unlawful preference consisting of the delivery by the insolvent debtor to the defendant of the promissory note of a third person, where the action is not for the conversion of the note but to recover the proceeds of it, the defendant may show that it realized all that it could on the note and what that amount was, and cannot be held for more.

In an action by an assignee in insolvency against a bank for alleged unlawful preferences made to the defendant by an insolvent partnership and its members, the cashier of the defendant testified that he never at any time before the failure of the partnership or of its members had any information that they intended fraudulently to convey or conceal any part of the assets of the firm. *Held*, that this evidence was admissible on the issue whether the defendant had reasonable cause to believe that the firm was insolvent or in contemplation of insolvency when the payments to it were made. The knowledge of the defendant being pertinent, the information which its cashier had was pertinent.

TORT by the assignee in insolvency of the joint and separate estates of Henry A. Davis of Boston and Henry C. Hathaway of New Bedford, copartners under the name of Henry A. Davis and Company, for funds and property alleged to have been paid and transferred to the defendant as unlawful preferences voidable under the insolvency laws of the Commonwealth. Writ dated April 1, 1897.

The declaration contained nine counts. The first count was for the conversion of nineteen bales of tobacco. The second count was for a payment of $500 made on March 1, 1895, to take up a note due on that date signed by H. A. Davis and Company and indorsed by Helen V. Taylor, wife of Charles Taylor, and by Viola I. Davis, wife of Henry A. Davis. The fourth count was for a payment of $500 made on March 19, 1896, on a note signed by H. C. Hathaway and indorsed by H. A. Davis and Company. The sixth and eighth counts were for a note signed by Garvin and Mendall and indorsed by H. A. Davis Company, a corporation, for $700, delivered to the defendant March 25, 1896.

The case was referred to an auditor, who reported in favor of the defendant on all the counts.

At the trial in the Superior Court before *Fox*, J., the plaintiff discontinued as to the ninth count, and by agreement judgment was entered for the defendant, on the third, fifth and seventh counts.

The jury returned a verdict for the plaintiff for $622.50 on the second count and for $217.87 on the sixth and eighth counts, and found for the defendant on the first and fourth counts. Both the defendant and the plaintiff alleged exceptions respectively raising the points stated by the court.

*W. R. Bigelow,* for the plaintiff.

*B. B. Jones,* for the defendant.

LATHROP, J. The first contention of the defendant is that the plaintiff is not entitled to a verdict on any count. This is based upon the fact that at the time of the conversion of the tobacco mentioned in the first count, and at the time of the payments set forth in the second count, and in the sixth and eighth counts, the legal title to the tobacco and the funds were in the H. A. Davis Corporation, and not in the firm of H. A. Davis and Company, whose assignee in insolvency the plaintiff is. To meet this view of the case the plaintiff contended that the formation of the corporation was a mere scheme or device to prefer the bank. This question the judge submitted to the jury under appropriate instructions, and the question is whether the requests that the plaintiff was not entitled to recover on these counts, for the reason stated, should have been given. The tobacco which is the subject matter of the first count need not now be considered, as we shall consider it later.

If the formation of the corporation was merely a scheme or device of the partnership to give a preference to the bank, it cannot be contended that it makes any difference in the right of the plaintiff to recover if he proves the other matters essential to his case. *Saunders* v. *Russell,* 171 Mass. 74, 76. In fact the defendant in its argument has assumed that such a scheme existed, but contends that the plaintiff, representing the creditors of the firm, has no equities greater than the equities of the creditors of the corporation. The answer to this is that it does not appear that the corporation had any creditors. The firm transferred all of its assets to the corporation, which assumed and agreed to pay its debts. The corporation consisted of but three members, Davis, one of the firm, Van Kleek, formerly a member, who was the bookkeeper of the firm, and whose money put in when he was a member had not been withdrawn, and one Taylor, whose wife was an indorser on a note, signed by the

firm as promisor.   There was nothing to show that the corporation did any business except in connection with the liabilities of the firm, and its only capital consisted of the assets of the firm.   It made a voluntary assignment for the benefit of its creditors on April 13, 1896, and all that the assignee had been able to realize from the assets assigned to him was something less than $300.

There can be no doubt that there was abundant evidence that both the firm and the corporation were insolvent when the alleged preferences were made; and the defendant admits that insolvency was contemplated, but denies that there was evidence that the defendant had reasonable cause to believe the insolvency or contemplation of insolvency.   The evidence in the case shows that the defendant knew that Davis had failed in 1894.   In the same year, when the firm of H. A. Davis and Company opened an account with the defendant bank it demanded that $1,000 be placed in the hands of its cashier, Edward H. Lowell, as general collateral security for any and all indebtedness, present or future, of the firm to the bank.   This was received in November, 1894.   On February 28, 1895, $500 more was required by the defendant on this account, and was paid.   It was for the jury to say whether this was in the ordinary course of business.   In the last five months of 1895, the firm overdrew its account with the defendant sixteen times. While most of these overdrafts were small, one of them was for $468 and two others were each for over $100; and on the last overdraft the bank closed the account with the firm.   This was evidence that both the firm and the bank knew that the firm was not in a solvent condition.   *Jordan* v. *Osgood*, 109 Mass. 457, 464.   *Haskins* v. *Warren*, 115 Mass. 514, 538.

In January, 1896, the bank had knowledge that the firm had transferred all its assets to the corporation, upon the understanding that the corporation should pay all outstanding debts of the firm.   The bank at that time, therefore, had reasonable cause to believe that the firm was insolvent.   *Stevens* v. *Pierce*, 147 Mass. 510.

The transaction complained of in the second count was the payment of the note of the firm for $500 indorsed by Mrs. Davis and Mrs. Taylor, due and paid by the corporation on March 1,

1896.    On that day the bank held three notes made or indorsed by the firm, which were due and had been protested more than fourteen days before.    This of itself was an act of insolvency. Pub. Sts. c. 157, § 112.

We can have no doubt that there was evidence that the defendant had reasonable cause to believe on March 1, 1896, that the firm was insolvent.

There was other evidence bearing upon the question, but we think we have stated enough to show that the question whether the defendant had reasonable cause to believe that the firm was insolvent was for the jury.

The defendant also contends that the defendant did not have reasonable cause to believe that the transfer or payment was made in fraud of the laws relating to insolvency.    But, as was said in *Whipple* v. *Bond*, 164 Mass. 182, " it is generally the rule, that, if the jury find that the person making the conveyance was insolvent at the time that it was made, and that it was made with a view to give a preference over other creditors, and that the person to whom the conveyance was made had reasonable cause to believe that his grantor was then insolvent, they will be authorized in finding that the conveyance was in fraud of the insolvent law.    *Abbott* v. *Shepard*, 142 Mass. 17."

There must of course be an intent to prefer, as the defendant has argued, or the defendant cannot properly be held to have had reasonable cause to believe that a preference was intended, but this intent may be inferred from the fact that a preference is given. *Denny* v. *Dana*, 2 Cush. 160, 172.    *Beals* v. *Clark*, 13 Gray, 18.    *Sartwell* v. *North*, 144 Mass. 188, 192.    *Chipman* v. *McClellan*, 159 Mass. 363, 367.

The cases relied on by the defendant are of two classes, namely, where the case was at law, but was tried before a judge without a jury and he has found for the defendant; or in equity, where the court passes on law and fact, or the case comes before the court in such a manner that only a question of law is raised.

*Bridges* v. *Miles*, 152 Mass. 249, is a case of the first class. The judge of the trial court there found, on a writ of entry to recover a parcel of land, that no preference was intended, and that the tenant had not reasonable cause to believe that the conveyance was made in fraud of the laws relating to insol-

vency; and ruled that the demandant was not entitled to recover, and reported the case for the determination of this court. Mr. Justice C. Allen, in delivering the opinion of the full court, sustaining the ruling of the judge below, said: " It is not a question of the weight of the evidence, but of its conclusiveness. No doubt the facts stated would have well warranted the inference that Mrs. Rose intended an unlawful preference of the tenant, and that he had reasonable cause to believe that she so intended.  The law would have authorized such an inference or presumption; but it is quite another thing to say that the law required it."

*Mundo* v. *Shepard*, 166 Mass. 323, was a bill in equity by an assignee in insolvency to set aside certain assignments of accounts.  It came before this court on a report of a judge of the Superior Court, who found for the defendant and reported certain facts and the evidence.  A majority of the court sustained the ruling, but stated in the opinion that there was no question that the evidence warranted a finding for the plaintiff.

*Bush* v. *Boutelle*, 156 Mass. 167, was also a bill in equity, and came before the court on agreed facts, and was decided in favor of the defendant on the ground that " It does not appear from the agreed facts that the defendant had any reason to believe that there was to be any fraud upon, or evasion of, the provisions of the insolvent law."  On agreed facts this court cannot draw inferences, unless as matter of law they are necessary inferences.  *Mayhew* v. *Durfee*, 138 Mass. 584.  *Collins* v. *Waltham*, 151 Mass. 196.  *Schwarz* v. *Boston*, 151 Mass. 226.  *Rand* v. *Hanson*, 154 Mass. 87.  *Courtemanche* v. *Blackstone Valley Street Railway*, 170 Mass. 50.

*Leighton* v. *Morrill*, 159 Mass. 271, came before this court on an appeal from a decree of the Superior Court in favor of the defendants.  The record showed a master's report in favor of the plaintiffs, who were assignees in insolvency of an insolvent debtor, a finding by a judge of the Superior Court in favor of the defendants, to whom it was alleged a preference had been made, and a full report of the evidence.  This court sustained the decree of the Superior Court.  There is nothing in the case to controvert the proposition that inferences may be drawn by the tribunal of fact.

The defendant's exceptions must be overruled.

Coming now to the plaintiff's exceptions, the first one is to the direction of the court to return a verdict for the defendant on the fourth count. This relates to a payment to the defendant by H. C. Hathaway, on March 19, 1896, of a note for $500, signed by Hathaway, payable to Davis and Company and indorsed by them. The payment was made out of Hathaway's private funds. The ruling was clearly right. The evidence showed without dispute that an involuntary proceeding in insolvency was begun in the insolvency court for the county of Bristol against Hathaway individually, and an assignee was appointed. The first publication of notice in that proceeding was on April 23, 1896. The first publication of notice in the proceeding under which the plaintiff was appointed assignee was made on June 17, 1896. If the payment was made under such circumstances that it can be set aside by an assignee in insolvency, it can be done only by the assignee appointed in the county of Bristol. See *Jaquith* v. *Fuller*, 167 Mass. 123.

The next exception relates to the first count. The judge in his charge to the jury instructed them, among other things, as follows: "If the bank received directly from the insolvent debtor a payment in full, that might authorize you to infer that the bank understood that a preference was intended; but if the property came to the bank through a third person, the question whether it ought to have understood that this was a preference may be a different question. That is a question for you to determine." The plaintiff excepted upon the ground "that an intent to prefer might be inferred just as much where a preference was given through a third person as where it was given directly, if the other elements of a fraudulent preference are found."

We see no ground of exception. The judge was not then dealing with the intent on the part of the debtor to prefer, but with the question whether the bank had reasonable cause to believe that a preference was intended. This appears clearly from the language used, and more clearly from the sentences immediately preceding what is objected to.

In relation to the substitution of collateral security, the judge first stated the general proposition that the bank had a right to

substitute one security for another of equal value, if the security in both cases belonged to the debtor, because the substitution of one security for another would not diminish the fund.   He then considered the case before him, where the security released belonged to Mrs. Davis and Mrs. Taylor, and instructed the jury as follows : " The question is whether the debtor intended to prefer the bank as a creditor, or was the sole purpose to release the property of Mrs. Davis and Mrs. Taylor ?   Was the sole purpose not to aid the bank, but to aid Mrs. Davis and Mrs. Taylor ?   If that was the sole purpose, then there could be no question of preference in that transaction.   If you find that a part of that purpose was to prefer the bank and that the bank had any reasonable cause to suppose that that was a part of the purpose, then you may find a fraudulent preference, although, as a matter of fact, the bank was not aided at all by the transaction by which certain securities were given up and others substituted in their place."   The plaintiff then requested the judge to modify this portion of the charge by adding that though the jury find that the tobacco was substituted for the real estate mortgages at the request of Davis, yet if this substitution was made for the purpose of giving a fraudulent preference to Mrs. Taylor, and the bank had reasonable cause to believe that that was the purpose of the substitution, the plaintiff might recover notwithstanding the transaction was a substitution of collateral.   The judge refused to modify the charge, and the plaintiff excepted.

We are of opinion that the charge should have been modified as requested.   It was not simply a case of a substitution of one collateral security for another, both belonging to the debtor, but the release of security belonging to a third person, and the substitution for it of property of the insolvent debtor, and the effect of the transaction was to diminish the estate of the insolvent. The first count was not based upon an intent to prefer the bank, but was for the conversion of the tobacco.   If the instruction requested had been given, there was evidence which would have warranted the jury in finding an intent on the part of the insolvent to contravene the provisions of the insolvent laws.   Pub. Sts. c. 157, § 98.   If the bank had reasonable cause to believe that this was the intent of the insolvent, it would make no difference that the bank gained nothing by the transaction.   *Crafts*

*v. Belden*, 99 Mass. 535. *Chipman* v. *McClellan*, 159 Mass. 363, 370. *Clarke* v. *Second National Bank*, 177 Mass. 257.

The next exception relates to the sixth and eighth counts. It appeared in evidence that on March 25, 1896, the defendant received a promissory note for $700, belonging to the Davis corporation, signed by Garvin and Mendall. This note the defendant discounted, and credited the proceeds, about $686, to Lowell, trustee. This account stood on the books as a balance to be kept against the discount account of H. A. Davis and Company, as security for any present or future indebtedness.

There was evidence admitted under the exception of the plaintiff that Garvin and Mendall subsequently made an assignment for the benefit of their creditors, and that the bank collected on the note $125 in money, and two notes for $200 each; and this was under a compromise with their creditors; that all reasonable precautions were adopted to collect the notes, but only a dividend under $50 was collected.

The plaintiff asked the following instruction: " If you find that the bank discounted the note of Garvin & Mendall for $700, and gave the Lowell trust fund credit for that amount, that would be of the same effect in law as though the bank had paid that amount of money into the Lowell trust fund in exchange for the note, and the bank would then be liable to the plaintiff for the full discount value of that note, if you find the bank liable in other respects." The judge refused to give this instruction, but said to the jury: " I have admitted evidence tending to show that the bank had used proper diligence in the collection of the Garvin & Mendall note, and it finally collected $175, and you may take that as evidence of the value of that note." The plaintiff excepted to this portion of the charge, and to the refusal of the court to rule as requested. The jury returned a verdict for the plaintiff on these two counts for $217.87; and the question before us is merely one of the measure of damages.

Neither the sixth nor the eighth count was for the conversion of the note. If it had been, we might have felt obliged to apply the rule that the damages were the value of the note at the time of the conversion, in which case the evidence as to the amount received for the note would have been immaterial. *Burpee* v.

*Sparhawk*, 97 Mass. 342, 345.   *Kellogg* v. *Tompson*, 142 Mass. 76, 77.

The plaintiff in any event was not entitled to the instruction asked for, for there was no evidence that the amount of $700 was put to the credit of the Lowell trust fund so called.

As to the instruction given, the action not being for the conversion of the note but to recover the proceeds of it, we are of opinion that the plaintiff has no ground of exception. If the defendant acted in good faith and realized all that it could from the note, it ought not to be held for a greater amount.

The last exception relates to the admission of a question put by the defendant to its cashier, Lowell, and his answer thereto. The witness testified that he never at any time before the failure of the corporation, or of Hathaway or Davis, or of Davis and Company, had any information that Davis and Company intended fraudulently to convey or conceal any part of the assets of the firm or corporation.

We see no reason why this evidence was not admissible on the issue whether the defendant had reasonable cause to believe that Davis and Company was insolvent or in contemplation of insolvency, and that such payment or conveyance was made in fraud of the laws relating to insolvency.   Pub. Sts. c. 157, § 96.

In *Coburn* v. *Proctor*, 15 Gray, 38, evidence that the alleged preferred creditors did not believe that the debtor was insolvent was held to be inadmissible, on the ground that the issue was reasonable cause to believe and not belief.   It was said by Mr. Justice Bigelow : " The only inquiry which, under the statute, was relevant to the issue was whether the defendants had reasonable cause to believe the debtor insolvent, that is, whether, in view of all the facts and circumstances which were known to the defendants concerning the business and pecuniary condition of the debtor, in connection with the time and mode of the transfer of the property taken, they, as reasonable men, acting with ordinary prudence, sagacity and discretion, had good ground to believe that the debtor was insolvent."   The knowledge of the defendant was therefore pertinent, and what information its cashier had, who had transacted all the business done with the insolvents, was also pertinent.   See also *Purinton* v. *Chamberlin*, 131 Mass. 589.

The result is that the exceptions of both parties must be over-ruled, except as to the first count, and judgment entered for the plaintiff on counts 2, 6 and 8, according to the verdict of the jury. On the first count the plaintiff's exceptions are sustained.

*So ordered.*