HAROLD W. BROWN, trustee, *vs.* NATHAN A. PELONSKY.

Suffolk.   November 13, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, SHELDON, & DeCOURCY, JJ.

*Bankruptcy,* Unlawful preference.   *Practice, Civil,* Exceptions.   *Payment.    Sale.*

At the trial of an action by a trustee in bankruptcy against a creditor of the bankrupt to recover, under the provisions of § 60, a, b, of the bankruptcy act of 1898 as amended in 1903, payments alleged to have been made as unlawful preferences by the bankrupt to the defendant, there was evidence tending to show that the bankrupt's wife was the defendant's first cousin, that the bankrupt had known and had had business relations with the defendant for many years, buying goods of him on credit and making payments on account and sometimes owing the defendant considerable amounts of money, that a year and four months before the bankruptcy the bankrupt owed the defendant over $2,500 and that the defendant never had asked the bankrupt for any notes ; that for more than five months before the bankruptcy the bankrupt was insolvent; that four months and three days before the bankruptcy the defendant demanded from the bankrupt twenty-six notes bearing interest at twelve per cent per annum, payable at monthly intervals and amounting in all to the bankrupt's then indebtedness to him, $1,962; that such methods were not in the usual course of business between them; that thereafter for all merchandise sold by the defendant to the bankrupt he received a check of the bankrupt dated ten days ahead, that most of such

checks afterwards were cashed, and that several of the monthly notes also were paid, all such payments being made within four months of the bankruptcy. Four months and three days after the giving of the notes, the bankrupt filed a voluntary petition in bankruptcy showing liabilities amounting to $7,002 and assets amounting to $315. The defendant asked the presiding judge to rule that the evidence was insufficient to justify a verdict for the plaintiff. The ruling was refused. *Held*, that the ruling properly was refused, since there was evidence warranting the jury in finding that the bankrupt intended to and did prefer the defendant, and that the defendant had reasonable cause to believe and did believe that the bankrupt so intended.

At the trial of an action by a trustee in bankruptcy against a creditor of the bankrupt to recover, under the provisions of § 60, a, b, of the bankruptcy act of 1898 as amended in 1903, payments alleged to have been made as unlawful preferences by the bankrupt to the defendant, there was evidence warranting the jury in finding for the plaintiff as to some at least of the payments. At the close of the evidence, the defendant asked the judge to rule "that the evidence was insufficient to justify a verdict for the plaintiff." The ruling was refused and there was a verdict for the plaintiff in a sum less than the total amount claimed in the declaration. The defendant alleged an exception only to the refusal to give the ruling asked for by him. *Held*, that it was not open to the defendant to contend in this court that some but not all of the payments set out in the declaration were payments made in cash sales.

Where an insolvent person purchases goods from one who knows of his insolvency and gives therefor checks dated ten days ahead, which checks afterwards are paid, such purchases may be found to have been made not for cash, and the payments may be found to have been made in satisfaction of antecedent debts and to have been preferences within § 60, a, b, of the bankruptcy act of 1898 as amended in 1903.

CONTRACT by the trustee in bankruptcy of one James Saltman to recover, under § 60, a, b, of the bankruptcy act of 1898 as amended in 1903, twenty payments alleged to have been unlawful preferences amounting to $1,614.89, made by Saltman to the defendant, a creditor. Writ dated October 9, 1908.

In the Superior Court the case was tried before *Hardy*, J. There was evidence tending to show that Saltman had been an overall manufacturer in Cambridge for seventeen years, that his wife was the defendant's first cousin, that he once had worked for the defendant and in all had known him for about twenty-two years, during which time he had bought goods of him on credit on which he made payments on account; that at various times he had owed the defendant considerable money, on March 19, 1907, owing him $2,542; that he had paid other persons interest as high as eighteen per cent per year; that at the time of the trial he was in business with a relation of the defendant; and that he had filed a voluntary petition in bankruptcy on July 17,

1908, in which he made affidavit that his liabilities amounted to $7,002.83 and his assets to $315.

Saltman, who was called as a witness by the plaintiff, testified with reluctance that he had been unable to pay his debts on January 17 and March 17, 1908; that during the six months preceding July 17, 1908, he had had no conversation with the defendant in regard to his financial condition; that on March 14, 1908, he had a conversation with the defendant in his office; that the defendant's bookkeeper used to put sales to and payments by him in a " little book " of Saltman's; that on March 14, 1908, he owed $1,962 to the defendant, who figured up that amount; that on that day the defendant made out twenty-six notes, covering the whole balance then due, payable from one to twenty-six months consecutively, for $75 each plus interest at twelve per cent, except that the last note was for $109, being $87 plus interest, and said to Saltman that he just wanted to straighten out the account, "jumped on Saltman;" that Saltman asked him why the defendant was now starting in with notes, and the defendant said, " We want once for all to straighten out how much you owe him, and what goods you buy hereafter will be a different transaction;" that Saltman then signed the notes; that the giving of these notes was not in the usual course of business between him and the defendant; that it was the first time that the account between him and the defendant was put in the shape of notes; that before that the defendant used to charge the goods on bills and " it used to run right along; " that he had no agreement to give these notes before he went at that time to the defendant's place, and when going there he didn't know he was going to sign any notes; that the defendant said that he didn't want to let the account run the way it was; that the notes were made payable so that it would be easy for Saltman to pay; that defendant said it was " too much for him to keep track of the account in that little book;" that after March 14, 1908, at divers times, up to the assignment, he bought goods of the defendant, paying therefor with checks dated ahead ten days, the defendant sending him the goods and he sending the defendant the check so dated ahead, all of which checks were paid except the last one or two; that he had been in the defendant's place between March 14 and July 17, 1908, sometimes two or three times a.

week and had talked with the defendant perhaps forty times, but that during all these conversations he could not remember whether or not he talked about his financial condition; that between March 17 and July 17, 1908, he had paid the defendant $1,538.39 in checks, including three checks with which he paid three of the notes given on March 14; that his bank balances on June 1 and July 1, 1908, respectively, were $143.60 and $18.16.

At the close of the evidence, the defendant asked the presiding judge to rule " that the evidence was insufficient to justify a verdict for the plaintiff." The ruling was refused. The jury found for the plaintiff in the sum of $560.89 ; and the defendant alleged exceptions.

*E. Greenhood*, for the defendant.

*T. R. Bateman*, (*H. W. Brown* with him,) for the plaintiff.

SHELDON, J. The evidence was very meagre, but in our opinion it presented a question for the jury. They could find that Saltman was insolvent on and before March 14, 1908, and remained so until he went into bankruptcy four months and three days later. From the very character of the transaction between the defendant and Saltman, the giving of the notes bearing the rate of interest and coming due at the dates fixed, and the arrangement that Saltman should still buy goods of the defendant and pay for them either in cash or by checks to be dated some days ahead and then to be collected in regular course, in connection with what could be found to be the desperate condition of Saltman's finances, the jury could infer not only that Saltman intended to prefer and did prefer the defendant, but that the defendant had reasonable cause to believe and actually did believe that Saltman intended thereby to give him a preference. Three of these notes were paid as they respectively came due. Certainly the jury could find that these payments constituted preferences, that Saltman so intended, and that the defendant had reasonable cause to believe this. That entitled the plaintiff to go to the jury. *Purinton* v. *Chamberlin*, 131 Mass. 589, 590. *Killam* v. *Peirce*, 153 Mass. 502. *Chipman* v. *McClellan*, 159 Mass. 363. *Jaquith* v. *Winnisimmet National Bank*, 182 Mass. 53. *Atherton* v. *Emerson*, 199 Mass. 199, 211. *Ridge Avenue Bank* v. *Studheim*, 145 Fed. Rep. 798.

The defendant's counsel has ingeniously argued that the pay-

ments made by Saltman for goods bought by him after the transaction of March could not be recovered as preferences, because they were really cash payments and so understood by the parties.  But this point is not open to him; for his only exception was to the refusal of the judge to rule that the evidence was insufficient to justify a verdict for the plaintiff, that is, a verdict for any amount.  Moreover, the jury could find that these payments were made, not when the goods were bought and the checks dated ahead were given, but only when the days of their dates were respectively reached and they were paid.  In that event, the purchases were not made for cash, and the payments were really payments of a precedent debt. *In re Lyon*, 121 Fed. Rep. 723.

*Exceptions overruled.*