JOHN D. BATCHELDER, trustee, *vs.* HOME NATIONAL BANK OF MILFORD.

Suffolk.    May 20, 1914. — June 17, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Bankruptcy,* Unlawful preference.    *Evidence,* Competency.    *Practice, Civil,* Exceptions.

In an action by a trustee in bankruptcy against a bank to recover the amount of an alleged unlawful preference, if it appears that the bankrupt, who knew that his indebtedness greatly exceeded his assets, paid to the defendant the full amount of his notes held by it, none of which had become payable and two of which would not be payable until more than two months later, and there is evidence warranting a finding that he did this from a desire to stand well with the defendant so that he could borrow from it afterwards if he again should go into business, it can be found that the bankrupt intended to prefer the bank to his other creditors.

In an action by a trustee in bankruptcy against a bank to recover the amount of an alleged unlawful preference, there was evidence that the defendant's cashier was a friend of the bankrupt, whom he had known for many years, during which the bankrupt kept an account with the defendant, the average daily balance of which was about $100, but without much balance on some days, that the defendant held notes of the bankrupt for $1,000, which were renewals of notes that during two years had been renewed as fast as they came due, that the bankrupt had carried on a retail grocery business, that eleven days before the alleged preference his store was destroyed by fire and he ceased to make deposits with the defendant, that on the day of the fire he borrowed from the defendant the further sum of $100 on a thirty day note with a responsible indorser, that on the day of the alleged preference he received $2,500 from the insurance on his store, that the defendant knew from a statement given to it by the bankrupt two years before that he then owed $4,300 on current bills and $1,050 for borrowed money besides what he owed to the defendant, that when the defendant's cashier knew that the bankrupt was to receive the insurance money he had a talk with him about payment to the defendant of the notes for $1,100 with a rebate for the interest not then accrued, that on a Saturday afternoon, after the defendant's closing hour, the bankrupt brought to it the check which he had received from the insurance company, that the defendant deducted from the amount of the check the amount of the bankrupt's notes held by it with a rebate for unaccrued interest and gave the bankrupt the balance in cash, and that the defendant entered the payment by the bankrupt on its books as made on the following Monday. *Held,* that this evidence warranted a finding that the defendant at the time of the payment had reasonable cause to believe that the bankrupt was insolvent and that he intended to prefer the defendant to his other creditors.

Where it appears by a bill of exceptions that a certain request for a ruling was refused in the terms asked for because the judge said that he had covered it in substance in his instructions to the jury, and the instructions given by the judge on this point are not stated, it must be assumed that they were correct and sufficient.

In an action by a trustee in bankruptcy to recover the amount of an alleged unlawful preference, although the bankrupt's schedule of his debts and assets filed in the bankruptcy proceedings is not admissible to show his insolvency at the time of the alleged preference, yet where the bankrupt has testified that his financial condition did not change materially from the time he made the payment alleged to be a preference to the time he filed the schedule, and the schedule then is admitted in evidence, against the defendant's exception, it may be considered that the schedule has been admitted as substantially embodying the testimony of the witness as to his financial condition when he made the payment alleged to constitute the preference, and under such circumstances justice does not require the sustaining of the exception and a new trial of the case for the correction of the formal error which cannot have affected injuriously the substantial rights of the parties within the meaning of St. 1913, c. 716, § 1.

CONTRACT by the trustee in bankruptcy of Jeremiah J. O'Neil to recover from the Home National Bank of Milford the amount of a preference alleged to have been made in violation of the bankruptcy act of 1898, § 60, as amended by U. S. St. 1903, c. 487, § 13. Writ dated January 21, 1910.

In the Superior Court the case was tried before *Morton,* J. The facts which could have been found upon the evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to make various rulings, of which the first was, that upon all the evidence the plaintiff could not recover and the verdict must be for the defendant. The tenth ruling requested, referred to in the opinion, which the judge refused to make because he had covered it in substance, was as follows: "10. If the bankrupt, at the time he made payment of the notes, intended thereby to create a preference in favor of the indorsers on the notes, and the cashier of the bank to whom the payment was made had no knowledge, actual or constructive, of such intention, then you cannot find for the plaintiff as against this defendant."

The judge refused to order a verdict for the defendant and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,389.66. The defendant alleged exceptions.

The case was submitted on briefs.

*W. Williams & S. D. Vincent,* for the defendant.

*J. T. Pugh,* for the plaintiff.

SHELDON, J.   The defendant's main contention is that there was no evidence to warrant a finding that O'Neil intended to give a preference to the defendant, or that the defendant had reasonable cause to believe that O'Neil was insolvent and intended to give to it a preference by paying the notes which it held.

There was evidence that O'Neil was insolvent.   It could be found that his indebtedness greatly exceeded his assets, and that he knew this fact.   He paid the defendant the full amount of his notes which it held, none of which had yet become payable, and two of which were not payable until more than two months later.   He made the payment, the jury could find, from a desire to stand well with the defendant, so that he could borrow from it afterwards, if he again should go into business.   The jury could find that the necessary effect of what he did was to prefer the bank, and could infer that this was his intention.   *Hewitt* v. *Boston Straw Board Co.* 214 Mass. 260.   *Wilson* v. *Mitchell-Woodbury Co.* 214 Mass. 514, and cases there cited.

It was a closer question whether the defendant had reasonable cause to believe that he then was insolvent and intended to prefer it to his other creditors.   To hold the defendant there must have been a reasonable cause of belief, not a mere ground of suspicion.   *Stuart* v. *Farmers Bank,* 137 Wis. 66.   *Grant* v. *National Bank,* 97 U. S. 80.   *Barbour* v. *Priest,* 103 U. S. 293.   *Stucky* v. *Masonic Savings Bank,* 108 U. S. 74.   On the other hand, it is equally true that this is a question of fact; that the inference of the fact may be drawn from circumstances; and that the same circumstances which to some minds would merely give ground for suspicion may afford also evidence which to other minds would carry conviction that they not only showed reasonable cause of belief, but actually had created a real belief.   *Hewitt* v. *Boston Straw Board Co.* 214 Mass, 260.   *Brown* v. *Pelonsky,* 210 Mass. 502.   *Carroll* v. *Hayward,* 124 Mass. 120, 122.   For these reasons, many of the decisions relied on by the defendant, in which the fact was determined by judges sitting without a jury, have no real bearing here.

There was evidence of the following facts: The defendant's cashier had known O'Neil for about twenty years and was quite

friendly with him. O'Neil had kept an account with the defendant for that time, with an average daily balance of about $100, but without much balance on some days. He had owed the bank the amount of these notes (excepting the note for $100) for nearly two years, they having been renewed as fast as they came due. He carried on a retail grocery business. On May 5, 1908, his store was burned out, causing a total loss, and he ceased to make deposits with the defendant. That afternoon he borrowed the further sum of $100 on his thirty-day note with a responsible indorser. On May 16, he received about $2,500 from the insurance on his store. Two years before this, according to his statement then given to the defendant, he owed $4,300 in current bills, and $1,050 on borrowed money. At this time he owed to the defendant, as the jury have found, $1,100 in notes for borrowed money and was liable to it as indorser on another note for $1000. When the defendant's cashier knew that O'Neil was about to receive the insurance money, he had a talk with O'Neil as to the payment of these notes for $1,100 with a rebate of the interest not yet accrued. On Saturday afternoon, May 16, 1908, after the closing hour of the defendant, O'Neil brought in to it the check which he had just received from the insurance companies; the defendant deducted from this the amount of its notes with a rebate of interest, and gave him the balance in cash. The defendant entered this payment on its books as made on Monday, May 18.

The defendant offered explanations of some of these circumstances, and as to some there was a conflict of evidence. But this of course was for the jury.

The payment of the notes before they were due, the fact that the whole transaction was an unusual one, the desperate condition in which O'Neil's finances then were, the intimacy of the defendant's cashier and its directors with O'Neil as testified to by the cashier, the haste with which the transaction was carried through after the usual business hours of the defendant, the fact that it was entered upon the defendant's books only on the next secular day, and that the money paid to the defendant came from the only means that then practically was available to O'Neil, as the jury could find that the defendant knew,— all these circumstances warranted the jury in drawing the inference contended for by the plaintiff. *Killam* v. *Peirce*, 153 Mass. 502. *Jaquith*

v. *Winnisimmet National Bank*, 182 Mass. 53. *Brown* v. *Pelonsky*, 210 Mass. 502. *In re The Leader*, 190 Fed. Rep. 624, 629.

We have examined all the decisions to which we have been referred by the defendant's counsel, and have found nothing which leads us to doubt the soundness of our conclusion. The jury were warranted in finding that the defendant had reasonable cause to believe that O'Neil was insolvent and that he intended to prefer the defendant to his other creditors.

There was evidence that the $100 note was held by the defendant and not by its cashier individually. O'Neil testified that he did not know that this loan was not made to him by the bank. Both the cashier and O'Neil testified that this note was included in the payment made by O'Neil to the bank on May 16.

It follows that the defendant's first request for instructions properly was refused. Its tenth request was refused in the terms asked for, because the judge said that he had covered it in substance. We are not informed what instructions were given upon the point, and must presume that they were correct and sufficient. *Townsend* v. *Niles*, 210 Mass. 524, 530. *Hubbard* v. *Allyn*, 200 Mass. 166, 172. As the matter of this request was covered, it must have been found that O'Neil intended to prefer the bank, and that the hypothesis stated in the request was not in fact true.

The schedules of O'Neil's assets and liabilities filed by him in the bankruptcy proceedings were not properly admissible. *Simpson* v. *Carleton*, 1 Allen, 109. *Hosmer* v. *Oldham*, 122 Mass. 551. But O'Neil testified that his condition had not materially changed from the time that he paid these notes to the time when he filed the schedules. They doubtless were admitted, as in *Atherton* v. *Emerson*, 199 Mass. 199, 210, as substantially embodying the testimony of the witness as to his financial condition when he paid the notes. That was material to be shown. Under such circumstances, justice does not require a new trial of the case for the correction of this formal error. It cannot have affected injuriously the rights of the defendant. St. 1913, c. 716, § 1. The case was tried in October, 1913, and the provisions of § 6 of the statute apply.

The other exceptions alleged in the bill have not been argued, and we treat them as waived.

*Exceptions overruled.*