## ROSENMAN v. COPPARD.

(Circuit Court of Appeals, Fifth Circuit. November 26, 1915. Rehearing
Denied January 4, 1916.)

No. 2758.

1. BANKRUPTCY ⊂⟹303—ACTION BY TRUSTEE TO RECOVER PREFERENCES—EVIDENCE.

In an action by a trustee in bankruptcy to recover preferences, the admission in evidence against defendant, on the question of insolvency, of the ex parte appraisement of the bankrupt's property, made several months after the alleged preferences, and of applications made for insurance by the bankrupt, including statements as to the value of her property, with neither of which the defendant had anything to do, *held* error.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ⊂⟹303.]

2. BANKRUPTCY ⊂⟹166—PREFERENCES—KNOWLEDGE OF CREDITOR.

Mere suspicion that a debtor may be insolvent is not sufficient to render payments received by a creditor voidable as preferences, but he must have such a knowledge of facts as to induce a reasonable belief of insolvency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. ⊂⟹166.]

In Error to the District Court of the United States for the Western District of Texas; William B. Sheppard, Judge.

Action at law by M. Coppard, trustee in bankruptcy of Rachel Kaufman, against Ike Rosenman, individually and as a member of the firm of Ike Rosenman and Saul Rosenman, copartners doing business as the New York Jobbing House. Judgment for plaintiff, and defendant brings error. Reversed.

C. A. Keller, of San Antonio, Tex., for plaintiff in error.

Henry A. Hirshberg and Harry M. Rosenblum, both of San Antonio, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. Mrs. Rachel Kaufman conducted two mercantile establishments, one in San Antonio and the other at Mission. Ike Rosenman and Saul Rosenman conducted a jobbing house, and, while this bore the name "New York Jobbing House," it also was

situated in San Antonio, and not very remote from Mrs. Kaufman's place of business. The Rosenmans (particularly Ike) were intimate friends of Mrs. Kaufman in a business and social way as well. Mrs. Kaufman was a regular purchaser from their wholesale stock. She paid them many sums, and occasionally, when there was a stringency in the currency, she would return their goods for which she had been unable to pay. Finally, however, on the 1st day of July, 1913, she filed a voluntary petition in bankruptcy, M. Coppard was elected trustee, and early in the ensuing year filed a suit against the Rosenmans, alleging that Mrs. Kaufman did, between the 1st day of January, 1913, and the 1st day of July of the same year, while hopelessly insolvent, make to the defendants sundry payments and sundry transfers of merchandise, which constituted a preference, for that the defendants knew or had reasonable grounds to believe that Mrs. Kaufman was insolvent. The trustee prayed for a recovery of $1,151.24 from Ike Rosenman and Saul Rosenman, doing business as "the New York Jobbing House," and for the other legal and equitable relief to which he was entitled. Saul Rosenman was never served with process, and for this reason perhaps he, like another Gallio, "cared for none of these things." Certain it is that he did not appear.

The defendant Ike Rosenman answered, and the cause was tried in January, 1915; the jury returning a verdict for the plaintiff for the amount sued for. Judgment followed. To the conduct of the trial, counsel for Rosenman presents here not less than 20 assignments of error. All of these, however, it does not seem essential to consider. A few are important.

[1] The burden of proof is usually on the plaintiff. This is peculiarly true where it is asserted that in bankruptcy a preference has been made. The legality of the evidence offered to sustain this burden must, of course, be determined by the usual rules. Now Rosenman was no party to the bankruptcy proceedings, and whether Mrs. Kaufman was solvent or insolvent, so far as his rights are involved, must be determined at the date of the payments to them, which were alleged and found to be preferences. The payments impugned were respectively, April 10, and May 9, 16, and 20, 1913. While the proceeding in bankruptcy was filed July 1, 1913, the appraisement was not made until August 6th of the same year. Now Rosenman was not a party to the appraisement; he had no opportunity, by cross-examination or otherwise, to test its accuracy. It was wholly ex parte, and yet its apparent official significance must have gravely impressed the jury. It is well known, by those having experience, that the appraisements of bankrupt stocks are not always precisely accurate.

The seventh assignment of error is distinctly important. It presents the exception that the court erred in admitting in evidence the original application and policies of insurance, with the Merchants' & Bankers' Fire Underwriters, of Rachel Kaufman, offered by the plaintiff, and in permitting plaintiff to read to the jury that portion of the application which indicated that her average stock at Mission was $6,000, that the cash value of her other property was $6,000, and that she had $1,000 other insurance on the Mission stock in the State Mutual Insurance Company of San Antonio. This evidence was sup-

plemented with the testimony of the insurance agent, Baker, who issued the policies. It is not pretended that Rosenman was present or in any way participated in this statement, or that he had any knowledge of the facts. As to him it is purely hearsay and res inter alios acta. Therefore, while Mrs. Kaufman may have been insolvent, we think that incompetent evidence has been admitted to sustain this charge.

[2] As to whether Rosenman had reasonable cause to believe that Mrs. Kaufman was insolvent, it may be well to bear in mind the language of Mr. Justice Bradley in Grant v. National Bank. Said that learned justice, speaking for the Supreme Court of the United States, 97 U. S. 81, 24 L. Ed. 971:

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable, belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule."

This learned justice continues:

"The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they knew anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided. Hence the act, very wisely, as we think, instead of making a payment or security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditors should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

This was the rule under the act of 1867. It is the rule now. In view of these considerations, the court is of opinion that the verdict and judgment should be set aside, and a new trial awarded.

And it is so ordered.