MAURICE P. WRENN, TRUSTEE, *vs.* THE CITIZENS NATIONAL BANK.

Third Judicial District, Bridgeport, April Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

In order to show that a preference voidable under § 60 of the Federal Bankruptcy Act has been given, it is necessary to prove that the debtor was insolvent, that he made a transfer of his property, that such transfer was made within four months before the filing of his petition in bankruptcy, that its effect was to enable a creditor to obtain a greater percentage of his debt than any other creditor

Wrenn *v.* Citizens National Bank.

of the same class, and that such creditor should then have reasonable cause to believe that the transfer would effect a preference.

The facts that a depositor did not have a sufficient balance in the bank to meet a note when due, but thereafter by means of his incoming assets in the course of his business his account became more than large enough to meet this note and another outstanding, though a month later he was adjudicated a bankrupt on his voluntary petition, are insufficient to show insolvency at the time the notes were paid.

To prove that the creditor had reasonable cause to believe the transfer would effect a preference, it is not enough to show that he has some cause to suspect the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency. He may have many grounds of suspicion that his debtor is in failing circumstances and be unwilling to trust him further; he may be anxious about his debt and have a strong desire to secure it; and yet he may want the well-grounded belief required by the Act. His subsequent knowledge is immaterial, and it does not matter what the debtor knew.

Accordingly, where a bank received payment of two notes owed to it by a depositor, one paid by a charge against the depositor's account and the other by a check, and the depositor had not had sufficient balance to meet the first note when due, but later had, though he was a bankrupt a month later, it was *held:*—

1. That neither insolvency of the debtor, nor reasonable cause for the creditor to believe a preference had been effected, had been shown, and hence there was nothing more than a voluntary exercise by the parties of the right of set-off, such as would be made under § 68 of the Bankruptcy Act after the adjudication, the exact form in which it was accomplished, whether by charge against the account or by check, being immaterial.

2. That it was also immaterial, in the absence of a preference, that the second note, when paid, would not be due for more than a month, since such an unmatured obligation is a claim provable in bankruptcy, and, under § 1 (11) of the Act, such a claim is a debt which is the subject of set-off under § 68 of the Act.

At any time before the commencement of bankruptcy proceedings, mutual dealers may adjust their obligations and consider unmatured as well as matured debts.

Evidence of a trade acceptance purporting to have been drawn by the debtor and presented to and protested by another bank, but not shown to have been accepted by the debtor or known to the creditor, and evidence of a statement of the debtor's financial affairs made by a stranger and not made known to or approved by either debtor or creditor, *held* properly excluded.

Argued April 13th—decided June 1st, 1921.

ACTION by a trustee in bankruptcy to recover moneys paid by the insolvent debtor to the defendant, the effect of which was alleged to be a wrongful preference, brought to the Superior Court in New Haven County where the plaintiff was nonsuited in a trial to the jury before *Kellogg, J.*, and from the refusal of the court to set aside such judgment the plaintiff appealed. *No error.*

*James A. Peasley,* for the appellant (plaintiff).

*Lawrence L. Lewis,* for the appellee (defendant).

BURPEE, J. The plaintiff's evidence, considered most favorably to him, showed that Martin W. Brown, the bankrupt, began to carry on business in Waterbury in June, 1919, and opened a checking account in the defendant bank, which he continued in the course of his business as a good account. On December 5th, 1919, he made a promissory note for $500 payable to the defendant one month after date, which was discounted by the defendant and the proceeds added to his account. On December 15th, 1919, he made another note for $500 payable to the defendant two months after date, which was used in the same manner. About December 23d, 1919, an examination of his books and sales accounts was made by some of his creditors, which showed that he was doing a good and profitable business, and this result was communicated to the defendant. On December 31st, 1919, Brown went to New York to raise more money to enlarge his business, and asked an officer of the defendant bank, who was a personal friend, to deposit in his account in the defendant bank any checks payable to him that should come to his office during his absence, saying that he expected to be gone about five days.

Brown fell sick in New York and was unable to return to Waterbury until about February 1st. As requested, his friend deposited checks in Brown's bank account amounting to $1,930.84 before January 10th, 1920. On January 5th, 1920, the first of the notes given by Brown to the defendant became due, but there were not then sufficient funds in his bank account to pay it. The defendant held the note until January 7th, 1920, and then charged it to Brown's account. About this time the defendant's officer who had charge of discounted notes became alarmed by Brown's absence and apparent neglect of his business, and caused a request to be sent to Brown to take up his second note. Consequently Brown sent his check, and the defendant applied it in payment of that note on January 10th, 1920. This transaction left a balance of more than $200 to Brown's credit, and before January 21st, 1920, further deposits were made amounting to about $500. On February 9th, 1920, on his voluntary petition, Brown was adjudicated a bankrupt. His assets will enable the trustee to pay not more than twenty-five per cent of his liabilities.

The plaintiff claims that the conduct of the defendant in thus using the bankrupt's bank deposits worked a preference in favor of the defendant, which was voidable by the trustee under subdivision b of § 60 of the United States Bankruptcy Law of 1898 (30 U. S. Stats. at Large, 562) as amended by Act of February 5th, 1903 (32 U. S. Stats. at Large, 799), and the subsequent amendment of 1910 (36 U. S. Stat. at Large, 842). The controlling provision of the Bankruptcy Law is § 60, the material part of which as amended June 25th, 1910, is: "(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, . . . made a transfer of any of his property, and

the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. . . .

"(b) If a bankrupt shall have . . . made a transfer of any of his property, and if, at the time of the transfer, . . . being within four months before the filing of the petition in bankruptcy . . ., the bankrupt be insolvent and the . . . transfer then operate as a preference, and the person receiving it . . . shall then have reasonable cause to believe that the enforcement of such . . . transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." We think the evidence, tested by these provisions, does not support the plaintiff's claim.

It appears that each of these transactions made a transfer of Brown's property, that they were made within four months of the filing of his petition in bankruptcy, and that the effect of each transfer was to enable the defendant creditor to obtain a greater percentage of its debt than any other creditor of the same class. But the Bankruptcy Law requires as the condition for recovery by the trustee in an action of this kind against the preferred creditor, that he shall prove two other distinct facts: first, the insolvency of the bankrupt at the time of the transfer; and second, that the person receiving the preference "shall then have reasonable cause to believe that . . . the transfer would effect a preference." In this action, then, the plaintiff had the burden of proving that Brown was insolvent on January 7th, 1920, or January 10th, 1920. We think he failed to sustain it. It was shown that Brown was doing a profitable business in December, 1919, and keeping a good bank account with the defendant, which was increased by deposits of nearly

$2,000 before January 10th, 1920. The fact that on January 5th, 1920, there was not on hand a balance sufficient to pay the first note when it became due, is not proof that Brown was then insolvent. By means of his incoming assets in the course of his business, his account became more than large enough to meet the drafts made upon it on January 7th and 10th, 1920. His insolvency on February 9th, 1920, does not prove that he was insolvent a month before.

But if the plaintiff had proved that Brown was insolvent in fact on January 7th, 1920, when the first note matured, it does not follow that the transfer is voidable. The bank was the owner of Brown's overdue note for $500, and was therefore his creditor on that day. At the same time it was also his debtor to the amount of his deposits on that day. These were mutual debts and subject to be set off against each other under the commercial laws of the States, which are recognized and, after bankruptcy, enforced by § 68 of the Bankruptcy Act, whenever the preferred creditor had no reasonable cause to believe that the enforcement would effect a preference. § 60b. We find nothing in the evidence in this case to indicate that this defendant had reasonable cause to believe that this application of Brown's deposits would effect a preference, or that it was made for the purpose of enabling the defendant to secure a preference by exercising its right of set-off. There must be something more than suspicion. "It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the Act to

establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it,—and yet such belief as the Act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law." *Grant* v. *National Bank,* 97 U. S. 80, 81; *Stucky* v. *Masonic Savings Bank,* 108 U. S. 74, 2 Sup. Ct. 219; *Rosenman* v. *Coppard,* 142 C. C. A. 520, 228 Fed. Rep. 114, 35 Amer. B. R. 786; *Batchelder* v. *Home National Bank,* 218 Mass. 420, 105 N. E. 1052; *Putnam* v. *United States Trust Co.,* 223 Mass. 199, 111 N. E. 969; *Matter of Cross* (N. Y. D. C. 1920), 265 Fed. Rep. 769, 45 Amer. B. R. 695; *Studley* v. *Boylston National Bank,* 229 U. S. 523, 527, 33 Sup. Ct. 806; *Paper* v. *Stern,* 117 C. C. A. 346, 198 Fed. Rep. 642, 28 Amer. B. R. 592; 2 Collier on Bankruptcy (12th Ed.) 907. Subsequent knowledge of the creditor is not material, and it does not matter what the debtor knew. *Hewitt* v. *Boston Straw Board Co.,* 214 Mass. 260, 101 N. E. 424; *In re Pfaffinger,* 154 Fed. Rep. 528, 18 Amer. B. R. 807. Since the plaintiff has not been able to prove that Brown was insolvent on January 7th or 10th, 1920, the defendant cannot be charged with a reasonable belief that he was insolvent at that time.

In this case neither of these two essential elements of a voidable preference has been proved. The transactions appear to have been made in good faith by the creditor and the debtor. Each was such an application of the debtor's money in the hands of the defendant as it had the right to make, and only such as the Bankruptcy Act would have made after the trustee in bankruptcy had been appointed. *Booth* v. *Prete,* 81 Conn. 636,

71 Atl. 938; *Germania Savings Bank & Trust Co.* v. *Loeb,* 110 C. C. A. 263, 188 Fed. Rep. 285, 26 Amer. B. R. 238, 243; *In re Percy Ford Co.,* 199 Fed. Rep. 334, 28 Amer. B. R. 919; *Studley* v. *Boylston National Bank,* 229 U. S. 523, 528, 33 Sup. Ct. 806. Whether the notes were charged against the maker's deposit in the bank or paid by his checks drawn on that deposit was only "a book entry equivalent to the voluntary exercise by the parties of the right of set-off." *Studley* v. *Boylston National Bank,* 229 U. S. 528, 33 Sup. Ct. 806, 809; *Matter of Cross,* 265 Fed. Rep. 769, 45 Amer. B. R. 695; *Wilson* v. *Citizens' Trust Co.,* 233 Fed. Rep. 697, 37 Amer. B. R. 86; 2 Collier on Bankruptcy (12th Ed.) 867, 892.

It appears that the second note, which was paid by Brown's check on January 10th, 1920, was not due until February 15th, 1920. But, since Brown was not insolvent on January 10th, he had the right to anticipate the time of payment, either of his own motion or on the request of the bank, and the bank had the right to accept the payment when it was made. If he had been insolvent, the preference effected by his advance payment could not be set aside in this action unless it be proved that the bank had reasonable cause to believe that a preference would be effected. In fact, this later transaction is to be tested by the same principles and rules of law that we have applied to the former transaction. That the second note was paid by check is immaterial. "For there is nothing in the statute which deprives a bank, with whom an insolvent is doing business, of the rights of any other creditor taking money without reasonable cause to believe that a preference will result from the payment." *Studley* v. *Boylston National Bank,* 229 U. S. 523, 526, 33 Sup. Ct. 806, 808; *Wilson* v. *Citizens' Trust Co.,* 233 Fed. Rep. 697, 37 Amer. B. R. 86. Although the second note was not

due, it represented a "debt" which might be the subject of set-off within the provisions of the Bankruptcy Act. Section 1 (11) of that Act (30 U. S. Stat. at Large, 544) provides that " 'debt' shall include any debt, demand, or claim provable in bankruptcy." To determine, therefore, whether the holder of a claim may have the benefit of a set-off under § 68 (30 U. S. Stat. at Large, 565), it is necessary only to inquire whether his claim is one provable in bankruptcy. If so, it is a "debt." A claim owing at the time when the petition in bankruptcy was filed is provable, whether due or not. 2 Collier on Bankruptcy (12th Ed.) 951, 968, 1094; *Steinhardt* v. *National Park Bank*, 120 N. Y. App. Div. 255, 105 N. Y. Supp. 23, 19 Amer. B. R. 72; *Germania Savings Bank & Trust Co.* v. *Loeb*, 110 C. C. A. 263, 188 Fed. Rep. 285, 26 Amer. B. R. 238. At any time before the commencement of bankruptcy proceedings, mutual dealers may adjust their obligations, and consider the unmatured as well as the matured. *Heyman* v. *Third National Bank*, 216 Fed. Rep. 685, 32 Amer. B. R. 716; *Fourth National Bank of Wichita* v. *Smith*, 153 C. C. A. 55, 240 Fed. Rep. 19, 38 Amer. B. R. 771.

There was no error in the rulings on the evidence offered. Exhibit L purported to be a trade acceptance by Brown, due January 5th, 1920, and presented to and protested by another bank. It did not appear that Brown had made such an acceptance or that this paper had come to the knowledge of the defendant. It was irrelevant, and it was immaterial because it had been admitted that on January 5th, 1920, Brown's balance in his bank account was less than $500. It did not appear that this paper represented a debt of or claim against Brown. Exhibit J purported to be a statement of Brown's financial affairs made by a stranger about January 15th, 1920, and not approved by the defendant or Brown or made known to either of them.

The plaintiff failed to prove the essential allegations of his complaint and to sustain the burden of proving the requisite conditions for recovery in an action of this kind.

There is no error.

In this opinion the other judges concurred.