## BRISTOL TRUST COMPANY *vs.* THE NATIONAL SURETY COMPANY.

First Judicial District, Hartford, January Term, 1922.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

A trustee in bankruptcy of one B contended that the repayment by B of loans to him by a savings-bank, were illegal preferences under the Bankrupt Act, and, because thereof, demanded $13,897 from the plaintiff, with which the savings-bank had subsequently been merged. The plaintiff negotiated a compromise with the trustee in bankruptcy, paying him $5,000 in full settlement of his claim, and then sought to recover this amount of the defendant under a policy of insurance wherein the defendant merely promised to indemnify the savings-bank against loss through the wrong-doing or misconduct of its treasurer. During the negotiations for a compromise the defendant, whenever consulted, denied the validity of the trustee's claim, and also that, if valid, it constituted a loss under its policy. No evidence was offered to show that

Bristol Trust Co. *v.* National Surety Co.

any repayments of the loans to B were made when he was insolvent, or that the savings-bank knew, or had any reasonable cause to believe, when it accepted them, that they would work a preference.  *Held* that under these circumstances the plaintiff could not recover, even if it were to be assumed that there were no other obstacles in its path.

The plaintiff contended that inasmuch as its settlement with the trustee in bankruptcy had been made in good faith, the defendant was bound thereby.  *Held* that this contention was unsound; that the defendant had not agreed to indemnify the plaintiff against liability, but only against loss, and was therefore entitled to have the issues of fact upon which its responsibility depended, litigated and determined in a court of competent jurisdiction.

It appeared that one of the reasons which actuated the plaintiff in paying $5,000 to the trustee, was to avoid publicity.  *Held* that reimbursement for the uncertain amount paid on this account was not covered by the defendant's policy; nor was it possible for the defendant to be subrogated to the rights of the plaintiff in respect to such an indefinite sum as the latter might be willing to pay to avoid publicity.

Argued January 3d—decided February 21st, 1922.

ACTION on a bond of indemnity, brought to and tried by the Superior Court in Hartford County, *Kellogg, J.;* facts found and judgment rendered for the defendant, from which the plaintiff appealed. *No error.*

The bond sued on indemnifies the Terryville Savings Bank, afterward consolidated and merged with the plaintiff, against loss not exceeding $10,000 through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of its treasurer, Frederick A. Scott, directly or in connivance with others.  The finding shows that while the bond was in force Scott made numerous advances of money or credit of the Terryville Savings Bank, to one Block, under the following circumstances: Block kept his checking account with the Thomaston National Bank, in an adjoining town.  He was in the habit of overdrawing his account in that bank, and from time to time, on

learning by telephone the amount necessary to meet his outstanding checks presented to the bank on that day, he went to the Terryville Savings Bank and gave to Scott his check to the order of the Terryville bank, drawn on the Thomaston bank, for the amount necessary to meet the overdraft, receiving from Scott either cash or checks drawn by Scott as treasurer of the Terryville bank on its account in the Thomaston bank; and these checks and cash Block deposited in the latter bank before the close of banking hours. His own checks given to the Terryville bank would not reach the Thomaston bank until several days later, and were always good when presented. In return for this accommodation Scott demanded and received of Block small amounts of money which Scott kept for himself. Scott knew that many of the checks taken by him from Block were not good when taken.

On August 1st, 1918, Block was adjudged a bankrupt, and on December 21st, 1918, his trustee in bankruptcy was duly authorized to bring an action against the Terryville bank to recover the aggregate sum of $13,-897.35, alleged to have been voidable preference payments made by Block to the Terryville bank in settlement of antecedent debts while Block was insolvent and within four months of the adjudication of the bankruptcy, and with knowledge of his insolvency by the Terryville bank.

In the meantime, on November 6th, 1918, the Terryville bank had been duly merged and consolidated with the present plaintiff, under the name of the Bristol Trust Company. The Bristol Trust Company then negotiated a compromise with the trustee in bankruptcy and the referee in bankruptcy, whereby the sum of $5,000 in cash was paid to the trustee in full settlement of these claimed receipts of voidable preference payments. During these negotiations the

defendant was consulted and consistently denied that the claim of the trustee in bankruptcy was enforcible, or, that if enforcible, it constituted a loss under the policy. This action on the indemnity bond was brought to recover the sum of $5,000 so paid, with interest, on the ground that it is, in the language of the policy, a "loss . . . through the . . . wrongful abstraction of Frederick A. Scott, . . . directly or in connivance with others."

*Epaphroditus Peck* and *Newell Jennings*, for the appellant (plaintiff).

*Charles Welles Gross*, with whom was *Alvan Waldo Hyde*, for the appellee (defendant).

BEACH, J. All the checks given by Block to the order of the Terryville bank were paid on presentation; so that until the payment of $5,000 to Block's trustee in bankruptcy the bank suffered no loss whatever. This sum was paid in settlement of the trustee's claim that a much larger aggregate amount had been received by the bank from Block under circumstances which made the whole of it recoverable by the trustee as a voidable preference. The plaintiff's claim is that the sum so paid is, in the words of the bond, a "loss . . . through the . . . wrongful abstraction of Frederick A. Scott." That is literally true. It has been expressly held that a loss through the "kiting" of checks by a bank cashier is covered by a policy of fidelity insurance similar to the policy in suit. *First National Bank* v. *U. S. Fidelity & Guaranty Co.*, 150 Wis. 601, 137 N. W. 742. It may, therefore, be assumed, for the purposes of this opinion, that the plaintiff would be entitled to recover in this action if the facts necessary to establish the receipt by the

Terryville bank from Block, of voidable preferences to the amount of $5,000, had been affirmatively adjudicated either in this action or in a suit brought against the bank by the trustee in bankruptcy. The facts have not been so adjudicated. There is no finding that Block was insolvent at any time before June 25th, 1918, when the last advance was made by Scott for Block's accommodation. Nor is the borrowing of money (for that is the theory on which the result of preferential payments is worked out), especially when it is promptly repaid, sufficient evidence of insolvency. *Wrenn* v. *Citizens National Bank*, 96 Conn. 374, 114 Atl. 120. It follows that no basis exists for discussing the other necessary element of voidable preference, which in this case would require proof that Scott continued to make a number of successive advances of the bank's funds and credit to Block after he knew, or had reasonable ground for believing, that Block was insolvent.

This complaint was framed and this action tried, on the theory that the settlement of the trustee's claim, provided it was a prudent and reasonable one, affords, as against the defendant, sufficient evidence of a legal liability on the part of the bank, and therefore sufficient evidence of its right to indemnity under the bond. The plaintiff relies on a line of cases which are concerned with policies of liability insurance, and which hold that an insurer who has agreed to take full charge of and defend or settle all suits brought to enforce an alleged liability of the kind insured against, and who refuses to do so, may become liable under the policy to repay to the insured the amount of any prudent settlement of the litigation. In all these cases the contract was not only for indemnity against loss, but for protection against liability, and the theory of the decisions is that when such an insurer

refuses to perform his agreement to manage and defend the action, he leaves the insured free to manage it and to make the best defense he can and the best settlement he can. As Mr. Justice Holmes said in the case next cited: "The defendant by its abdication put the plaintiff in its place with all its rights." *St. Louis Dressed Beef & Provision Co.* v. *Maryland Casualty Co.*, 201 U. S. 173, 182, 26 Sup. Ct. 400; *Interstate Casualty Co.* v. *Wallins Creek Coal Co.*, 164 Ky. 778, 176 S. W. 217; *Rieger* v. *London Guarantee & Accident Co.*, 202 Mo. App. 184, 211, 215 S. W. 920; *Wisconsin Zinc Co.* v. *Fidelity & Deposit Co.*, 162 Wis. 39, 51, 155 N. W. 1081.

In the present case, however, the contract is simply one for indemnity against loss through the wrongful misconduct of Scott as treasurer. The defendant did not agree to protect the assured against liability, nor to defend any actions against the assured brought by third persons, and therefore it was under no obligation to assume the management and control of the negotiations between the plaintiff and Block's trustee in bankruptcy. Nor was it asked to do so. It had the right to keep its hands off and it has done so; and that being so, we are unable to see how it has lost its right to have the issues of fact on which its liability under the policy depends, litigated and determined in a court of competent jurisdiction.

There is in this particular case another reason why the defendant is not bound by the settlement, for it is found that "among the chief reasons actuating the Bristol Trust Company to make such compromise was to avoid publicity," etc.; and of course the defendant cannot be called upon to indemnify the plaintiff in respect to any part of the price which the latter was willing to pay to avoid publicity.

Another consideration not without force is, that in

indemnity insurance the insurer on payment of a loss is subrogated to the rights of the insured against the wrongdoer; and in respect of the uncertain amount which the plaintiff was willing to pay to avoid publicity, the defendant would have no right of subrogation.

There is no error.

In this opinion the other judges concurred.