RICHARD B. WALSH, trustee in bankruptcy, *vs.* LOWELL TRUST COMPANY.

Middlesex.   March 6, 1923. — May 28, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Bankruptcy,* Preference.   *Bank,* Officers and agents.

A certain trust company had no treasurer. The by-laws provided for the election by the directors of an actuary, whose duties were to act as secretary to the directors and to the finance committee, to furnish information to the finance committee in regard to the standing of customers or prospective customers, to have special charge of the deposit and trust departments of the company, to render annual reports to the stockholders, to have general supervision of the company's business and to be second in authority to the president. *Held,* that the actuary was an officer of the company whose knowledge or information as to the financial condition of a debtor of the company, from whom a payment was accepted which, after the customer's bankruptcy, was claimed by his trustee in bankruptcy as a preference, was imputable to the company.

Findings by a master, to whom was referred a suit in equity by a trustee in bankruptcy against a trust company to recover the amount of a payment by the bankrupt to the defendant alleged to have been a preference under the provisions of the national bankruptcy act, as to the duties of the actuary of the trust company and as to knowledge of the bankrupt's financial condition held by the actuary, *were held* to justify a finding that the facts which came to the knowledge of the officials of the defendant were sufficient to put them upon inquiry as to whether the bankrupt was or was not insolvent

when the payment was made, and to justify a conclusion that the defendant had reasonable cause to believe that the effect of such payment would be to give the defendant a preference over other creditors of the same class.

To justify a recovery by the plaintiff in an action by a trustee in bankruptcy for a payment alleged to have been made by the bankrupt to the defendant as a preference under the national bankruptcy act, the trustee in bankruptcy is not required to prove that the bankrupt intended to give a preference, if the defendant, at the time he received the payment, had reasonable cause to believe that the bankrupt was insolvent.

In an action by a trustee in bankruptcy of the character described above, the plaintiff is not required to show actual knowledge of the debtor's insolvency by the creditor alleged to have been preferred, and the creditor's honest opinion that the debtor was solvent is immaterial if he was in possession of information which upon investigation would have shown that in fact the debtor was insolvent.

In the suit above described, certain alleged rulings, that the knowledge or information of the actuary was imputable to the bank on the facts found, and that the payment gave the company a preference over other creditors of the same class, were within the province of the master.

BILL IN EQUITY, filed in the Superior Court on October 28, 1920, by the trustee in bankruptcy of Guy F. Cochran, who was adjudicated a bankrupt on April 26, 1920, to recover $1,224 alleged to have been paid to the defendant by the bankrupt on March 25, 1920, and alleged to have been a preference under the national bankruptcy act.

In the Superior Court, the suit was referred to a master. Material findings by the master are described in the opinion. The suit was heard upon the pleadings and the master's report by *Hammond*, J., by whose order there was entered a final decree sustaining certain exceptions of the plaintiff to the report, not now material, overruling others, confirming the report as modified, adjudging that the payment in question operated as a preference under the national bankruptcy act and ordering that the plaintiff have execution against the defendant for $1,224 with interest from the date of the filing of the bill and for his costs. The defendant appealed.

*H. D. McLellan,* (*S. P. Sears* with him,) for the defendant.

*R. B. Walsh,* trustee, *pro se.*

BRALEY, J. The answer admits that the plaintiff is the duly appointed trustee in bankruptcy of the estate of Guy F. Cochran, who on March 25, 1920, paid within four months

prior to the date of adjudication a debt he owed to the company amounting to $1,224 which it had acquired by assignment from one Mendlik, the bankrupt's original creditor, who owed the company a much larger amount. It is found that at the date of the payment the bankrupt was insolvent, and if the payment was a preference, the defendant will obtain a greater percentage of its debt than other creditors of the same class. The plaintiff was not required to prove that the bankrupt intended to give a preference, and the main contention is whether the defendant on March 25, 1920, had reasonable cause to believe that Cochran was insolvent. *Rogers* v. *American Halibut Co.* 216 Mass. 227, 229, and cases and statutes there cited.

The bankrupt, who had been a depositor for almost three years before the payment in controversy, was indebted to the company for a loan of $180, secured by collateral, which had been thrice renewed, the last renewal being March 6, 1920. While the officers of the company designated in the report were in the performance of their respective duties chargeable with knowledge of its transactions with the bankrupt, shown by the books, *Allen* v. *Puritan Trust Co.* 211 Mass. 409, 420, to which we shall hereafter refer, the defendant is also chargeable with information obtained by its officers as to the bankrupt's insolvency, when acting within the scope of their authority. *Batchelder* v. *Home National Bank*, 218 Mass. 420.

The company never elected a treasurer but the duties of such officer devolved on the president and in his absence on the actuary. The master, after recitals of the powers of the president George M. Harrigan and his interviews with the bankrupt concerning the transaction here in question, states, "I am unable to find that Harrigan either personally or as representative of the Lowell Trust Company of which he was president, had reasonable cause to believe that on March 25, 1920, when Cochran paid the $1,224 to said company in liquidation of the balance then due on the Mendlik account, he was insolvent and unable to pay his debts." And this finding is not contested by the plaintiff. The by-laws of the company however provide that the

" Board of Directors shall elect by ballot an actuary who shall be *ex officio* secretary of the Board . . . and who shall be subject to removal at the pleasure of the Board . . . and that all conveyances of real estate ordered by said directors shall be signed by the President or Actuary " with certain exceptions which are immaterial. By article nine of the by-laws, " The Actuary shall have charge of the Corporate Seal. He shall be *ex officio*, secretary of the Board of Directors, attend its meetings, and keep its records. In the absence of the President he shall call such meetings to order for the purpose of organization. He shall have special charge, under the direction of the President and Finance Committee, of the deposit and trust departments of the Company. He shall have the custody of all bonds, stocks, moneys, and other assets and property and all papers and documents owned by the Company, or under its charge. He shall pay its current expenses, and disburse its moneys, under the direction of the President, Finance Committee and Board of Directors. He shall cause to be kept accurate books of account of the business of the company, which shall at all times be open to the inspection of the Directors, and in common with the President he may sign all certificates of stock, and all deeds of the Company, except as the Directors may otherwise provide, he may sign, countersign, or indorse checks, drafts, orders for money, and receipts, and the bonds or other securities which shall be issued through the Company as trustee. He shall render to the stockholders annual reports in writing of the business and condition of the company, and to the Directors similar reports, monthly or oftener if required; and shall perform such other duties as .shall from time to time be assigned to him." The actuary also serves as secretary of the finance committee, but " has no vote and takes no part in their deliberations except to furnish upon request such information as to the standing or credit of customers or prospective customers as may have come to his attention." He is further " entrusted with the general clerical management of the bank, has general supervision over, is second in authority to the president and with certain limitations . . . has, in the absence of the president, general

charge of the affairs of the institution." On findings which need not be further recited, the master correctly held that the knowledge and information of John F. Connors, defendant's actuary, as to the financial condition of the bankrupt was imputable to the company. *Melledge* v. *Boston Iron Co.* 5 Cush. 158, 178, 179. *National Security Bank* v. *Cushman*, 121 Mass. 490. *Rogers* v. *American Halibut Co.* 216 Mass. 227. *Hewitt* v. *Boston Straw Board Co.* 214 Mass. 260, 264.

The plaintiff contends that Connors possessed information as an officer of the company which should have put him upon inquiry as to the solvency of Cochran. It is stated that on January 17, 1920, when a creditor of Cochran, one Chisholm, brought a promissory note given to him by Cochran to the banking rooms of the defendant and conferred with the actuary, he asked him, "What do you know about this man?" meaning Cochran, and the reply was, "I understand he is getting weak." The actuary in making this response "referred either to knowledge, information or rumor he had previously obtained or heard relative to Cochran's financial condition." The actuary "knew through his familiarity with the books of the bank, that there was a depositor at the trust company by the name of Guy F. Cochran, and understood that Chisholm in inquiring of him as to what he knew about the Cochran who had signed said note . . . was seeking information concerning the financial condition of this particular depositor," and that the account of Cochran "on March 25, 1920," "just before the deposit of $1,200 . . . which was at once offered, together with an additional $24, in settlement of the Mendlik account, was only $89.54." We do not deem it material to quote other statements of the general conduct of the actuary in approving the note Cochran gave to Chisholm, who "was never able to get credit on any notes deposited to his checking account from the receiving teller, without first procuring" the actuary's written approval "upon such." The master also finds "that at no time prior to March 25, 1920, did any of the officials or employees of the bank inquire of Cochran as to the amount of his assets or the extent of his liabilities, or

attempt to ascertain either through him or by means of an independent investigation, the number of his creditors, or the amount of his indebtedness to each," and " that such an investigation if properly conducted would have disclosed the fact that on March 25, 1920, Cochran was insolvent and unable to pay his debts." The evidence is not reported, and this finding must stand, as well as the finding, that on all the " facts relative to Cochran's financial condition " which " came to the knowledge of the officials . . . of the bank," and which are reported in detail, " were sufficient to have put a reasonably cautious and prudent man upon his inquiry as to whether Cochran was or was not insolvent and unable to pay his debts " on March 25, 1920.

The defendant urges that, if the actuary and the defendant's other servants or agents believed that Cochran was solvent, their belief was evidence of what a reasonable man would have believed under the circumstances, and is also evidence that the defendant did not have reasonable cause to believe that Cochran was insolvent when the payment was made. It is unnecessary to show actual knowledge by the creditor. A creditor may honestly be of opinion that his debtor is solvent. But if he is in possession of information which upon investigation would have shown that in fact his debtor was insolvent, he cannot avail himself of a transaction prohibited by the statute. *Hewett* v. *Boston Straw Board Co.* 214 Mass. 260, 263. It is a question of fact on all the evidence. *Jacobs* v. *Saperstein,* 225 Mass. 300, 301.

We are of opinion that the findings appearing on the face of the report when reviewed, are sufficient to support the master's conclusion, that the defendant " had reasonable cause to believe that the effect of such payment would be to give said company a preference over other creditors of the same class." *Batchelder* v. *Home National Bank of Milford,* 218 Mass. 420, 422. *Jacobs* v. *Saperstein,* 225 Mass. 300, 301, 302.

The defendant's exceptions were overruled rightly. The findings to which it excepted have all been referred to, and related to material questions directly put in issue by the

pleadings. The alleged rulings that the knowledge or information of the actuary was imputable to the bank on the facts found, and that the payment gave the company a preference over other creditors of the same class were within the province of the master to decide. *Bradley* v. *Borden,* 223 Mass. 575. The decree is affirmed with costs.

*Ordered accordingly.*