HUGH A. CREGG, trustee in bankruptcy, *vs.* MERCHANTS TRUST COMPANY.

Essex.     January 11, 1924. — April 12, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & WAIT, JJ.

*Bankruptcy*, Preference.     *Corporation*, Officers and agents.

At the trial of an action by a trustee in bankruptcy against a trust company for $3,000 alleged to have been paid to the defendant by the plaintiff's bankrupt as a preference in violation of the national bankruptcy act, there was evidence tending to show in substance that the bankrupt had been a continuous borrower from the defendant with the knowledge of one who was one of its directors, a member of its executive committee which passed on the questions of loans made to the plaintiff's bankrupt, and an indorser upon notes of the bankrupt, frequently renewed, both with the defendant and with another trust company; that the bankrupt's store was in the near vicinity of the defendant and that it had been burned and he had suffered a large loss; that thereafter he transferred his account with the defendant from his own name to an agency account in which he made deposits to bring the account to over $7,500, and that he then paid the defendant the sum of $3,000; that at the time such payment was made the bankrupt was hopelessly insolvent and, by reason of the payment, other creditors received but a small percentage upon their claims. *Held*, that

(1) A finding was warranted that the deposits made after the fire were not made in the usual course of business;

(2) A finding was warranted that the defendant had reasonable cause to believe that the application of such deposits and the payment to it would enable it to get more than its share of the insolvent estate;

(3) The fact, that the payment from the agency account to the defendant was made on the date of maturity of a note held by the defendant, did not prevent recovery in this action;

(4) The fact, that the defendant's director was an indorser on notes of the bankrupt at both banks, did not raise a presumption that he would not communicate his knowledge of the loan at the other trust company to the defendant's executive committee, of which he was a member, whenever it was in session and had under consideration the matter of the financial responsibility of the plaintiff's bankrupt.

CONTRACT, by the trustee in bankruptcy of the estate of Daniel F. McCarthy, Jr., for $3,000, being an amount alleged to have been paid by the plaintiff's bankrupt to the defendant as a preference in violation of the provisions of the national bankruptcy act.   Writ dated June 23, 1917.

In the Superior Court, the action was tried before *Qua,* J. Material findings are described in the opinion.   At the close of the evidence, the defendant asked for the rulings described in the opinion and also for the following:

" 4. The knowledge of a director is not to be imputed to the trust company concerning a matter in which he had a personal interest adverse to the trust company.   Knowledge of a director concerning a note, or the maker of a note, on which the director is an indorser, is not to be imputed to the trust company.

." 5. The knowledge of a director is not to be imputed to the trust company, unless the director is the agent of the company acting in the matter."

The requests were refused.   There was a verdict for the plaintiff in the sum of $4,035.   The defendant alleged exceptions.

*D. J. Murphy,* (*J. S. Eastham* with him,) for the defendant.
*E. J. Ford,* for the plaintiff.

PIERCE, J.   This is an action of contract, brought by the plaintiff as trustee in bankruptcy of the estate of Daniel F. McCarthy, Jr., to recover the sum of $3,000 which the trustee alleges was paid as a preference to the defendant by the said McCarthy while he was insolvent, in violation of the bankruptcy act.

It is not in dispute that McCarthy was adjudged an involuntary bankrupt on May 8, 1916; that the plaintiff was duly elected and now is trustee of said bankrupt; that the petition, filed on April 18, 1916, showed his liabilities to be $7,666.90 and his assets $650. It is also not in dispute that the evidence warranted a finding that the defendant bank on a demand note, indorsed by Maurice J. Curran and William H. Donovan, on the sole responsibility of the indorsers, loaned the said McCarthy $5,000 in 1910, to start a business; that in February, 1914, the amount due on this note was reduced to $1,700, and that in accordance with a new policy of the bank the demand note was changed to a time note, payable in three months, was indorsed by the same indorsers, and the loan raised to $3,000; that the evidence warranted a finding that the time note of $3,000 was not paid in whole or in part when due, but was renewed, in reliance on the sole responsibility of the same indorsers, every three months until April 1, 1916, the date of the alleged payment; that the defendant bank by the payment of the note on April 1, 1916, or by the set-off of certain deposits made by McCarthy in March, 1916, in the manner hereinafter described, received one hundred cents on the dollar of its debt, with the effect that all other creditors of the same class could receive as a final dividend no more than six cents on the dollar.

The facts in relation to the deposits and to the payment of the $3,000 note which are alleged by the trustee to have given a preferential advantage to the defendant, as shown by the bill of exceptions, in substance are that the bankrupt's deposit in the bank where he carried his account averaged in January, 1916, about $150 a week; that his only deposits in February, 1916, were on February 9, $109 and on February 16, $72.50; that on February 29, 1916, there was a destructive fire in the store of the bankrupt, which originated in another part of the building; that the store was closed until about the last week in March, 1916; that while the store was closed the fire loss was adjusted; that the store of the bankrupt was located on the opposite side of the street in the same block as a branch of the defendant bank and the

treasurer of the defendant knew of the fire and that the store was closed.

The reported facts further show that, after the fire, no deposits were made in the McCarthy, Jr., account; that on March 7, 1916, a check for the full amount of the bankrupt's account was transferred in the defendant bank to the name of Daniel F. McCarthy, agent, and in this account all subsequent deposits were made; that the fire insurance money, paid by draft payable to the bankrupt, was indorsed by him and deposited in this account, and all money received from the sale of merchandise was deposited in this account; that the check by which the account was withdrawn and then transferred to the account of Daniel F. McCarthy, agent, overdrew by $8.74 the bankrupt's account, and this overdraft continued unpaid until the adjudication in bankruptcy of McCarthy, Jr., although notice had been immediately sent the bankrupt to make good the overdraft; that the deposits in the Daniel F. McCarthy, agent, account were thereafter as follows: on March 13, 1916, $2,781.09; on March 13, 1916, $6 or $8; on March 15, 1916, $1,023.69; and thereafter other sums on other days until on April 1, 1916, the day on which the note in question was paid, the McCarthy, agent, account amounted to $7,537.20. The defendant contended and the trial judge ruled that the preference, if any, occurred when the deposits in the agent account on March 7, 13 and 15 amounted to $3,000.

There was evidence which warranted a finding that the indorser Curran was at all material times a director of the defendant bank and a member of the executive committee, whose duty it was to pass on loans and renewals thereof; and as such member he passed upon the renewal of the said note of $3,000 a week or two previous to January 1, 1916. There was also evidence, which does not appear to have been excepted to, that Curran at all material times had knowledge that McCarthy, Jr., in 1910 gave a note of $6,500, with the indorsement of Maurice J. Curran and William H. Donovan to the Puritan Trust Company; that said note was not paid in whole or in part when the deposits were made in the agent account in March, 1916, or when the note

of the bankrupt was paid by check on such account on April 1, 1916.

Regarding the payment of the note by check, it appears by the evidence of the teller of the defendant bank that two weeks before the due date of the note he sent notice to McCarthy, Jr., of the time when the note would mature; and that on April 1, 1916, the due date of the note, he received a check in payment of the note; that this check was drawn on the account of Daniel F. McCarthy, agent, on deposit in the defendant bank at the time, and that he delivered the note with the indorsements thereon to the persons making payment thereof; that on March 23, 1916, there was a draft on the bankrupt for $351.79; that this draft was not paid, although the bankrupt was notified by the defendant of it; and that the defendant bank placed the draft in the hands of an attorney, for action. There was further evidence that the bankrupt was never asked by the defendant or its agents of his financial condition, and that he would have told them of such condition had he been asked; and also, the testimony of the treasurer that he never had considered the bankrupt apart from his indorsers good for a loan of $3,000.

The bill of exceptions does not state that it contains all the material facts or evidence of facts. At the close of the testimony for the plaintiff, the defendant moved for a directed verdict and assigned as reasons therefor, in substance, with other grounds now waived, that the evidence did not warrant the jury in finding that the defendant " knew," " ought reasonably to have believed " or " had reasonable cause to believe " that McCarthy, the maker of the note which was paid the defendant, " was insolvent at the time of the payment referred to in the plaintiff's declaration."

The motion was denied rightly. The evidence was abundant to prove, and it is not now disputed, that the application of the March deposits to the note and the payment by check on such deposits on April 1, 1916, enabled the defendant to obtain a greater percentage of his debt than other creditors, within four months of the filing of the petition in bankruptcy. Manifestly this deposit and pay-

ment of the note were a transfer within the meaning of § 60 a, of the bankruptcy act (U. S. Comp. Sts. § 9644). It is not disputed that McCarthy was insolvent when the transfer was made.

The question for decision is, on these facts, Did the defendant or its agents have reasonable cause to believe that the transfer would effect a preference within the meaning of said § 60 a and § 60 b? The determination of this question involves and requires an answer to the question, Were the deposits in March in the defendant bank and the check drawn on such deposits on April 1, 1916, made and drawn in good faith in the usual course of the business of the bankrupt, or were they made and drawn by the bankrupt to enable the bank to secure a preference as defined in § 60 a, *supra? New York County National Bank* v. *Massey,* 192 U. S. 138. *Studley* v. *Boylston National Bank,* 229 U. S. 523. *Merrimack National Bank* v. *Bailey,* 289 Fed. Rep. 468. We think the jury would be warranted in finding that the deposits were not made in the usual course of business after the transfer of the bankrupt's account to the agent account on March 7, 1916: the insolvent had ceased to do business; his property had been destroyed by fire, and his store merchandise sold; and they would be warranted in making the further finding that the bank had reasonable cause to believe that the application of such deposits and check would enable it to get more than its share of the insolvent estate. *Jacobs* v. *Saperstein,* 225 Mass. 300. *Abele* v. *Beacon Trust Co.* 228 Mass. 438. *Underwood* v. *Winslow,* 231 Mass. 595. *Walsh* v. *Lowell Trust Co.* 245 Mass. 455.

At the close of the evidence the defendant requested and the court refused to rule in substance:

" 1. If the holder of a negotiable promissory note, indorsed by one or more solvent indorsers, requiring protest, receives payment thereof on the day of maturity from the maker, such holder gives full present consideration for such payment, to wit, the loss or impairment of the obligation of the indorsers, and the payment so made cannot be recovered as a preference under the bankruptcy act.

" 2. The holder of a negotiable promissory note, indorsed

by one or more solvent indorsers, must accept payment from the maker, if tendered on the day of maturity, even though the holder has reason to doubt the solvency of the maker; otherwise the holder will lose the obligation of the indorser; by such payment the obligation of the indorser is extinguished; and the loss to the holder of the obligation of the indorser is a full and fair present consideration given by the holder for the payment made to him; and such payment cannot be recovered as a preference under the bankruptcy act.

" 3. If the defendant held a note, secured by good and . solvent indorsers, who, as a condition of their obligation, were entitled to have demand made for a payment on the day of maturity and notice of nonpayment, if such were the fact, and such note was paid by the maker on the day of its maturity, the plaintiff cannot recover of the defendant in this action."

These contentions are disposed of against the defendant by the case of *Swarts* v. *Fourth National Bank,* 117 Fed. Rep. 1, wherein Sanborn, J., collects and convincingly analyzes the cases in a clear and persuasive opinion. See also *Hewitt* v. *Boston Straw Board Co.* 214 Mass. 260. R. L. c. 73, § 130. Moreover the defendant requested and the judge ruled that the question of preference was to be determined by the conditions which existed in March and not the conditions on April 1, when the payment was made. The request numbered 4 and request numbered 5 were refused rightly in the form in which they were presented. *Loring* v. *Brodie,* 134 Mass. 453, 458. *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268. *Innerarity* v. *Merchants' National Bank,* 139 Mass. 332. Curran, whose knowledge was sought to be imputed to the bank, was a director of the bank and more particularly was a member of the executive committee; and as such had passed upon the renewal of the note or notes as often as every three months from February, 1914, until April 1, 1916. During this time at every meeting of the executive committee which passed upon the loan to McCarthy and upon the renewals of his note, Curran acted upon and knew of the continued existence of the note for

$6,500 at the Puritan Trust Company.   In such circumstances it would seem that no personal interest of his adverse to the bank raised a presumption that he would not communicate his knowledge of the Puritan Trust Company loan to the executive committee, whenever it was in session and had under consideration the matter of the financial responsibility of McCarthy, Jr.

We find no reversible error in the conduct of the trial.

*Exceptions overruled.*