AUBREY Z. GOODFELLOW, trustee in bankruptcy, *vs.* WEBBER LUMBER AND SUPPLY COMPANY, INCORPORATED.

Worcester.   September 27, 1926. — November 24, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Bankruptcy*, Preference.   *Payment*, By check.   *Jurisdiction.*

The mere giving of a check for the amount of an account owed by the maker to the payee is not, as a matter of law, a payment; and if, at the time when the check is given, the maker has not funds to meet it in the bank upon which it is drawn and, before he presents the check for payment, the payee learns facts respecting the maker's financial condition which were sufficient to put a reasonably cautious and prudent man upon his inquiry as to whether or not the maker was insolvent and unable to pay his debts, receipt of the amount of the check thereafter properly may be found to constitute a preference under the national bankruptcy act.

The Superior Court of this Commonwealth has jurisdiction of a suit in equity by a trustee in bankruptcy to recover from the defendant an amount alleged to have been paid him by the bankrupt as a preference, when both the bankrupt and the defendant are residents of the county in which the suit is brought.

BILL IN EQUITY, by amendment from an action of CONTRACT begun by a writ dated November 15, 1923.

In the Superior Court, the suit was referred to a master. The substance of the master's findings of fact and of exceptions by the defendant to the master's report is stated in the opinion.   By order of *McLaughlin*, J., a decree was entered overruling the defendant's exceptions and directing a repayment to the plaintiff of money, adjudged to have been

paid to the defendant as a preference under the national bankruptcy act, in the sum of $2,260. The defendant appealed.

*A. M. Levy*, for the defendant.

*S. M. Salny*, for the plaintiff.

CROSBY, J. The plaintiff, as trustee in bankruptcy of the estate of Hermas P. Charron, seeks to recover from the defendant, an unsecured creditor, an alleged preferential payment of $2,000 made by Charron to the defendant within four months before December 19, 1922, on which date the debtor was adjudicated a bankrupt.

In 1921 and 1922 Charron resided in Fitchburg where he was engaged in business as a contractor and builder. He purchased lumber and building materials during those years from the defendant, which was a dealer with a place of business in Fitchburg.

The case was referred to a master who made the following and other findings: In 1922 and before Charron was adjudicated a bankrupt the defendant had sold him lumber and materials from time to time. The defendant knew Charron had no capital when he engaged in business in that year, and that he had to pay what he owed out of amounts received on his building contracts. During this year he owed large amounts for labor, hardware and other materials, he gave several checks which were not paid because of lack of funds, and he was not in a sound financial condition after the middle of the summer. He had the reputation among dealers and contractors of being financially weak, but the defendant did not know his reputation in this respect and did not know that his checks given to others had not been paid. On November 3, 1922, the defendant's salesman, one Tice, received from Charron a check for $2,000 drawn on the Safety Fund National Bank of Fitchburg. Charron did not have sufficient funds in the bank to pay the check if presented on the day it was delivered to the defendant, but he did then have in his possession a check on the same bank for $2,350, signed by one Fluet. On the day Tice received the $2,000 check he took it to the office of the defendant. A few days before November 3 one Aubuchom, a creditor of Charron,

had a talk with Henry S. Albro, the defendant's credit man and bookkeeper, in which the financial standing of Charron and other contractors was discussed, and it was suggested that the yards and dealers ought to exchange information in relation to Charron and others and that they should be denied credit because they were weak financially. Between November 3, when the $2,000 check was received, and November 6, when it was paid, Aubuchom went to the defendant's office and talked with its president and with Tice and Albro. He then told them that Charron owed him a large amount and had promised to pay him from the proceeds of the Fluet job; that he had been advised Charron had made the defendant a large payment of money; that Charron was bankrupt and his property had been attached, and he requested the defendant's president to join with him and others in petitioning Charron into bankruptcy. The master further found that after the conversation between Aubuchom and the defendant's officers the latter concluded that Charron was financially embarrassed and declined to furnish him with lumber on another job then pending unless the owner signed the order.

On November 6 the defendant deposited the check for $2,000 in the bank upon which it was drawn, and Charron the same day deposited the check for $2,350 received by him from Fluet, and the defendant had credited to it $2,000, which was charged to Charron's account. At the date of this payment Charron was found to be bankrupt.

The concluding findings of the master are in substance that, if the defendant had made inquiries from other dealers known by it to be in the business of furnishing materials and labor to contractors in Fitchburg, or had made inquiry of Charron at any time after October 1, 1922, it could have learned that he was not meeting his obligations and was unable to do so; that the defendant made no inquiries concerning Charron's financial condition before November 3, and had no information of it before that date; that the facts respecting his financial condition which the officers of the defendant learned were sufficient to put a reasonably cautious and prudent man upon his inquiry as to whether or

not Charron was insolvent and unable to pay his debts on November 6, 1922.

The evidence upon which the foregoing findings were made is not reported, and as they are not mutually inconsistent or plainly wrong, they must stand.

It is manifest on the facts found that the giving of the check on November 3 was not a payment of the defendant's claim. Neither on that date nor afterwards until November 6 when the check was paid did the bankrupt have sufficient funds in the bank with which to meet it, and there was no finding that it was intended by the defendant's officers to be a payment on the date when it was received by the defendant. The receipt of a check is not a payment in the absence of evidence to show that it was accepted as such. *Taylor* v. *Wilson*, 11 Met. 44, 51. *Bergman* v. *Granstein*, 235 Mass. 378. *Feinberg* v. *Levine*, 237 Mass. 185. It is not the giving of a check but the payment thereof that constitutes a payment under the bankruptcy act. *In re Lyon*, 121 Fed. Rep. 723, 726. *Watchmaker* v. *Barnes*, 259 Fed. Rep. 783, 788.

The findings recited in the report are sufficient to support the conclusion of the judge of the Superior Court that the payment in question constituted a preference under the bankruptcy act. They show that when the defendant accepted payment of the check it knew or had reasonable cause to believe that such payment would give it a preference over other creditors. *Rogers* v. *American Halibut Co.* 216 Mass. 227. *Jacobs* v. *Saperstein*, 225 Mass. 300. *Walsh* v. *Lowell Trust Co.* 245 Mass. 455.

The defendant's first, second and fourth exceptions to the master's report, based on objections that the facts found in certain paragraphs were not material, cannot be sustained, as the facts in question were relevant to the issues involved. The third exception, that the facts found are not sufficient to show that the defendant was under any legal duty before November 3, to make inquiry concerning Charron's financial condition, is without merit and was rightly overruled.

The contention of the defendant that the Superior Court

was without jurisdiction to entertain this action cannot be sustained. Accordingly the sixth exception to the master's report is overruled. The bankrupt and the defendant were both residents of the county of Worcester, therefore the Superior Court had jurisdiction of any action brought by the plaintiff in his capacity as trustee for the bankrupt against the defendant. *Sutcliffe* v. *Cawley*, 240 Mass. 231, 237, and cases there collected.

The order for a decree and the final decree are affirmed with costs.

*So ordered.*