RAPHAEL A. A. COMPARONE, trustee in bankruptcy, *vs.* M. J. CAPLAN COMPANY, INC.

Essex.    October 8, 1929. — January 17, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Bankruptcy,* Preference. *Set-off.*

After a merchant had given a mortgage to a creditor only upon the personal property employed in his business and his stock in trade, but not upon the good will of the business, to secure payment of a note for $2,000, a corporation, which was another creditor, refused him further credit unless it was secured. Thereupon the merchant made an arrangement whereby the holder of the note and mortgage assigned them to the second creditor. Thereafter the merchant left the State and, at the request of his wife, she having power of attorney from him, the president of the corporate creditor, during a period of ten days in which facts came to his attention showing insolvency of the merchant, arranged a sale of the merchant's business for $3,600 in the following manner: the corporation served and recorded a notice of intention to foreclose the $2,000 mortgage it held as assignee; a bill of sale was given by the merchant to the purchaser of all personal property in the business

including its good will; the purchaser gave the corporation creditor a new note secured by a mortgage in the sum of $2,400 and an unsecured note for $1,200. There was at least one other creditor of the merchant. Afterwards the merchant was adjudicated a bankrupt. The effect of the transaction, if it stood, was that no creditor would receive anything from the estate in bankruptcy. The purchaser made some payments on the $1,200 note. In a suit by the trustee in bankruptcy against the corporation creditor to establish and to recover a preference under the national bankruptcy act, the trial judge found that the new second note for $2,400 given to the defendant by the purchaser had not exceeded in value the $2,000 note formerly held by the defendant; and a decree was entered directing the defendant to transfer to the plaintiff the $1,200 note and all payments made thereon. The defendant appealed. *Held*, that

(1) A contention by the defendant, that the transaction in question was at most only an exchange of securities with no depletion of the bankrupt's estate, could not be sustained, as it appeared that it included a transfer, beyond what was included in the original mortgage transaction, of at least the good will of the business;

(2) A contention that the $1,200 note was valueless was disproved by the payments made upon it;

(3) There was no right of set-off in the defendant, even if there were a failure of the defendant's security to equal the face value for which it was pledged: thereby the defendant only would become an unsecured creditor for the amount of the deficit, with no greater right against unpledged assets than any other unsecured creditor;

(4) The decree was proper and was affirmed.

BILL IN EQUITY, begun in the Superior Court by a writ in trustee process dated November 30, 1928, by the trustee in bankruptcy of Gedeon Guillemette, to recover an alleged preference.

The defendant in its answer, by way of counter claim, averred and prayed as follows: "that the plaintiff in the above entitled case, acting as counsel for one Vincenzo Pappalardo, brought suit against Gedeon Guillemette and his wife Victoria Guillemette in the District Court of Lawrence, March 15, 1928, and summoned the said Isauere Beaulieu as trustee, intending to try by trustee process the issue of a preference; that on March 26, 1928, the plaintiff, acting as counsel for said Vincenzo Pappalardo, brought a bill in equity in the Superior Court for the county of Essex, against the said M. J. Caplan Company, Inc., and Isauere Beaulieu, alleging a preference as to Vincenzo Pappalardo and asking for injunctions, among others that the wife of the

said Gedeon Guillemette be enjoined from leaving the State of Massachusetts; and alleging that the plaintiff in said bill of complaint knew of no other creditors and that therefore he could not petition the defendant into bankruptcy; that on April 28, 1928, while said actions were still pending the plaintiff as counsel for said Vincenzo Pappalardo et al. petitioned the said Gedeon Guillemette into involuntary bankruptcy, and that the said Gedeon Guillemette was duly adjudicated a bankrupt on July 19, 1928; that both of said cases are still pending and undisposed of, and that the plaintiff as counsel for both cases has argued many motions before the justices of said courts since the filing of said bankruptcy petition, and in the District Court case has appealed to the Appellate Division in an attempt to charge the trustee Isauere Beaulieu in said case; that the plaintiff brought the present suit on the thirtieth day of November, 1928, by means of a trustee writ in which writ the Arlington Trust Company was named as trustee and attached the funds of the said M. J. Caplan Company, Inc., to the value of $3,000.00, on deposit in the said Arlington Trust Company, and that thereby the said M. J. Caplan Company, Inc., was required to furnish a bond to dissolve said attachment; and the defendant says that it was harassed and annoyed and put to great expense by a multiplicity of suits all of which are still pending; that it therefore has a counter claim against the plaintiff and asks the court to award damages therefor and for such other relief as the court shall deem fit, and in the meantime the defendant prays that the court will issue an order restraining the defendant from further prosecuting or litigating the District Court suit of Vincenzo Pappalardo *vs.* Gedeon Guillemette and Victoria Guillemette, Isauere Beaulieu, trustee, above referred to, and from further prosecuting or litigating the equity suit of Vincenzo Pappalardo *vs.* M. J. Caplan Company, Inc., Isauere Beaulieu, Gedeon Guillemette and Victoria Guillemette, above referred to until further order of this court."

The suit was heard by *F. T. Hammond*, J. Material facts found by him are stated in the opinion. The judge

also found as follows: "The effect of the transaction of March 10, 1928, was that all of Guillemette's property of any value was sold to Beaulieu, and the entire purchase price was paid over to the Caplan Company, consisting of the mortgage note for $2,400 and the unsecured note for $1,200 signed by Beaulieu (on which $700 has been paid). The effect of this transfer if it stands will be that no creditor of Guillemette will receive anything from his estate in bankruptcy. . . . I am unable to find, however, that the mortgage and mortgage note for $2,400 given by Beaulieu were worth more than said $2,000 mortgage."

A final decree was entered directing "that the defendant forthwith indorse over without recourse unto the plaintiff the note for $1,200 signed by Isaure Beaulieu and dated March 10, 1928, payable to the defendant, and on which there has been paid the amount of $700 and also pay over to him in cash the sum of $700." The defendant appealed.

*E. McAnally,* (*M. Nicholson* with him,) for the defendant.

*R. A. A. Comparone,* for the plaintiff.

WAIT, J. The plaintiff as trustee in bankruptcy of Gedeon Guillemette brings this bill in equity to recover for an alleged preference, and after a decree for the plaintiff, the defendant appeals. The judge found that Gedeon Guillemette, who was adjudicated bankrupt on July 19, 1928, had carried on a baker's business at Methuen in a building which he owned, and which he had mortgaged to one Miller on June 23, 1926, to secure payment of a note for $2,000. At the same time and to secure the same debt he gave Miller another mortgage of the personal property used in his business, which included baking utensils and apparatus, delivery automobiles and wagon, and stock in trade. The defendant, which carried on a wholesale grocery and bakers' material business in Lawrence, and had been selling supplies to Guillemette, when it learned of the mortgage to Miller, refused to furnish him goods on credit; and thereupon it was arranged between Guillemette, Miller and the defendant that Miller should assign the personal property mortgage to the defendant as security for goods thereafter to be supplied to Guillemette. Miller

assigned the mortgage and indorsed the note to the defendant on August 11, 1926, and the defendant continued to sell to Guillemette. Shortly after February 27, 1928, Guillemette left Massachusetts. His wife notified the defendant of his leaving, and asked its assistance in the business; and from March 1 to March 10, Caplan, an officer of the defendant, was at the bakery and assisted her. Guillemette then owed the defendant $1,386.54 on open account and $2,398.89 on notes which it had discounted — a total of $3,785.43. In the ten-day interval, Mrs. Guillemette gave the defendant a check for $515, and one for $299.86, signed by her as attorney for her husband. Both were dishonored. Notice of nonpayment was given on March 9. Between the first and tenth of March, Caplan secured a purchaser, one Beaulieu, who agreed to purchase Guillemette's business for $3,600. On March 10, 1928, the defendant served notice of intention to foreclose its mortgage on Mrs. Guillemette and recorded notice and affidavit of notice with the town clerk of Methuen on March 12, 1928, pursuant to G. L. c. 255, §§ 5, 6, 7. Also on March 10 Mrs. Guillemette, by virtue of a power of attorney from her husband authorizing her to deliver a bill of sale conveying all his right, title and interest in the bakery business, including all personal property used or kept in the business, all accounts receivable and the good will, executed and delivered a bill of sale of the business to Beaulieu; and Beaulieu gave the defendant his note for $2,400 payable in two years from its date, March 10, secured by a mortgage dated March 10, of all the personal property used in the business, including the stock of raw material on hand; and also gave the defendant his demand note dated March 10, 1928, for $1,200. This was the entire consideration paid by Beaulieu. On March 13, Beaulieu paid $500 and on March 19, $200 on the demand note. On March 13, its bank charged back to the defendant the amount due of one of the checks given it by Mrs. Guillemette, and on March 17 the bank was repaid the amount of the other dishonored check — a total of $816.88.

On March 10, besides the $3,785.43 due the defendant, Guillemette owed one Pappalardo, an unsecured creditor,

$818.25. What else he owed, if anything, did not appear. His only assets were his house and his business. The house was worth not over $6,500, and there were mortgages on it for $8,100. The property held by the defendant as assignee of Miller was worth not more than $800. The judge found that (1) on March 10 Guillemette was insolvent, (2) the defendant "had reasonable cause to believe" him to be insolvent, (3) a transfer of his property was made to Beaulieu which benefited the defendant, (4) the defendant had reasonable cause to believe that the transfer would effect a preference under the bankruptcy act, and (5) that the effect of the transfer, if it stands, will be to enable the defendant to obtain a preference to the extent of the $1,200 note given by Beaulieu, and the excess of value, if any, of the $2,400 mortgage over the $2,000 mortgage. The mortgage and note for $2,400 do not exceed in value the $2,000 mortgage held by the defendant. He ruled that the plaintiff was entitled to recover the $1,200 note and the $700 payments made upon it.

The law is established that unless the effect of the transaction complained of is to deplete the estate of the bankrupt there is no preference which can be recovered by the trustee in bankruptcy. *Baker* v. *Chisholm,* 268 Mass. 1, and cases there cited. *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502. Nor is there a preference where there is merely an even exchange of securities. *Hanford* v. *Codman,* 266 Mass. 93. The defendant contends that here there has been at most only an exchange of securities with no depletion of the bankrupt's estate. The contention cannot be supported. The valid mortgage to Miller conveyed only the personal property employed in the business and the stock in trade. If we assume, though it nowhere appears, that this covered after-acquired property, nevertheless there was conveyed to Beaulieu, in addition, the good will of the business. The value of this good will undoubtedly entered into the consideration for the note of $1,200. This good will, whatever its actual value, was an asset of the bankrupt's estate which he had not pledged as security to Miller and thus to the defendant. We cannot say the judge would

have been wrong if he had found it to be the entire consideration for the note. Although the finding is not entirely clear, it is manifest that the judge found that there was in what Beaulieu gave a greater value than the mortgage for $2,400 which took the place of the Miller mortgage for $2,000. Otherwise there would have been no depletion of the bankrupt's estate. The contention that the $1,200 note was valueless is disproved by the payments made upon it.

We find nothing helpful to it in the defendant's contention that it acquired a good title to the mortgaged goods by the failure of the trustee to redeem within sixty days. *Reade* v. *Woburn National Bank*, 211 Mass. 320. Its title under that mortgage did not give it the ownership of the good will. That was conveyed to Beaulieu by the bankrupt. The decree allows the defendant to keep the value of its original security, and recognizes that in that there is no preference.

We are unable to see how any right of set-off arises here because of the failure of the security to equal the face value for which it was pledged. The defendant would be only an unsecured creditor for the amount of the deficit, with no greater right against unpledged assets than any other unsecured creditor. A payment taken with cause to believe the debtor insolvent, if taken within four months of the petition in bankruptcy, would be a preference under the bankruptcy act. *Brickley* v. *Wrenn*, 252 Mass. 16, relied on by the defendant, is not in point. In that case the right to set-off was in existence more than four months before the petition in bankruptcy, and the property applicable to the deficit was in the creditor's hands before the happening of the acts which constituted the alleged preference. Here the right arose, if ever, and the property sought to be applied came to the creditor out of the bill of sale to Beaulieu, in the course of the transactions which resulted in the preference. *Hathaway* v. *Fall River National Bank*, 131 Mass. 14. *Rogers* v. *American Halibut Co.* 216 Mass. 227. *Putnam* v. *United States Trust Co.* 223 Mass. 199. *Walsh* v. *Lowell Trust Co.* 245 Mass. 455. *Goodfellow* v. *Webber Lumber & Supply Co. Inc.* 257 Mass. 503. See also *Casey* v. *Harry S.*

*Gordon Leather Co.* 259 Mass. 188.  The judge was justified on the evidence in his findings of fact, and correct in his ruling of law.

*Decree affirmed with costs.*